IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

```
* * * * * * * * * * * * * * * *
                              *
UNITED STATES OF AMERICA      *
                              *    Case No. 2:18-cr-780
vs.                           *
                              *    February 6, 2020
QUENTIN JOHN FISHBURNE and    *
RENATA SHONTEL ELLISON        *
* * * * * * * * * * * * * * * *
```

REPORTER'S OFFICIAL TRANSCRIPT OF THE
MOTION HELD BEFORE
THE HONORABLE DAVID C. NORTON
UNITED STATES DISTRICT JUDGE
FEBRUARY 6, 2020


APPEARANCES:


FOR THE GOVERNMENT:

    Christopher Braden Schoen
    US Attorney's Office (Chas)
    151 Meeting Street
    Suite 200
    Charleston, SC  29401
    843.727.4381

FOR DEFENDANT FISHBURNE:

    Albert Peter Shahid Jr.
    Shahid Law Office
    89 Broad Street
    Charleston, SC  29401
    843.853.4500

```
 1                          APPEARANCES:

 2

 3   FOR DEFENDANT ELLISON:

 4        Christopher Reginald Geel
          Geel Law Firm LLC
 5        170 Meeting Street
          Suite 110
 6        Charleston, SC  29401
          843.277.5080
 7

 8

 9

10

11

12

13

14

15

16   Official Court Reporter:     Tana J. Hess, CRR, FCRR, RMR
                                  U.S. District Court Reporter
17                                Middle District of Florida
                                  Tampa Division
18                                801 N. Florida Avenue
                                  Tampa, FL  33602
19                                813.301.5207
                                  tana_hess@flmd.uscourts.gov
20
     Proceedings recorded by mechanical stenography using
21   computer-aided transcription software.

22

23

24

25
```

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
| 1:24 PM  | 1  | (Call to order of the Court.)                            |
| 2:05 PM  | 2  | **THE COURT:**  Take your seats.  Thanks.  Yes, sir,     |
| 2:06 PM  | 3  | Mr. Schoen?                                              |
| 2:06 PM  | 4  | **MR. SCHOEN:**  Your Honor, the next case is United     |
| 2:06 PM  | 5  | States of America versus Quentin John Fishburne and Renata |
| 2:06 PM  | 6  | Shontel Ellison.  It's criminal number 2:18-cr-780.     |
| 2:06 PM  | 7  | We're here on a number of motions:  Motions for          |
| 2:06 PM  | 8  | Severance made by both of the Defendants, a Motion for a |
| 2:06 PM  | 9  | Deposition made by Mr. Shahid on behalf of Mr. Fishburne, and a |
| 2:06 PM  | 10 | Motion for Bond was also mentioned.                      |
| 2:06 PM  | 11 | **THE COURT:**  Okay.  And, of course, there's a Motion  |
| 2:06 PM  | 12 | to Suppress that was filed at 5:00 yesterday afternoon.  You |
| 2:06 PM  | 13 | haven't responded to that yet?                           |
| 2:06 PM  | 14 | **MR. SCHOEN:**  No, Your Honor.  We are working         |
| 2:06 PM  | 15 | furiously on that part.                                  |
| 2:06 PM  | 16 | **MR. SHAHID:**  And we got a motion this morning on     |
| 2:06 PM  | 17 | 404(b) evidence from the Government, so --               |
| 2:06 PM  | 18 | **THE COURT:**  Okay.                                    |
| 2:06 PM  | 19 | **MR. SCHOEN:**  And notice.                             |
| 2:06 PM  | 20 | **MR. SHAHID:**  A lot of things flying in the cyber     |
| 2:06 PM  | 21 | world.                                                   |
| 2:06 PM  | 22 | **THE COURT:**  Juries have a tendency to focus          |
| 2:06 PM  | 23 | everybody.  So I'm ready when you are, Mr. Shahid.       |
| 2:06 PM  | 24 | **MR. SHAHID:**  Judge, first thank you for the Court's  |
| 2:06 PM  | 25 | indulgence.                                              |

|  |  |  |
|---|---|---|
| 2:06 PM | 1 | **THE COURT:** No problem. |
| 2:06 PM | 2 | **MR. SHAHID:** I apologize for the delay, but -- |
| 2:07 PM | 3 | **THE COURT:** The first rule in my chambers is family |
| 2:07 PM | 4 | comes first. |
| 2:07 PM | 5 | **MR. SHAHID:** Thank you, Judge. I appreciate that. |
| 2:07 PM | 6 | Your Honor, we have two motions I think somewhat |
| 2:07 PM | 7 | tied together. One is a motion for severance, and the other is |
| 2:07 PM | 8 | a motion to depose Ms. Ellison, our co-defendant. |
| 2:07 PM | 9 | This is a simple but a complicated case I think |
| 2:07 PM | 10 | the Government has brought to the grand jury and that's pending |
| 2:07 PM | 11 | for our trial later on in March. |
| 2:07 PM | 12 | Mr. Fishburne is charged with two counts being a |
| 2:07 PM | 13 | felon in possession of a firearm. Both those counts result |
| 2:07 PM | 14 | from a traffic stop that occurred on different -- different |
| 2:07 PM | 15 | times. |
| 2:07 PM | 16 | In addition, he's charged with a conspiracy with |
| 2:07 PM | 17 | Ms. Ellison to -- and there's a -- multiple parts of that |
| 2:07 PM | 18 | conspiracy are to lie to a federal firearms dealer about |
| 2:08 PM | 19 | obtaining guns and then being engaged in providing guns to |
| 2:08 PM | 20 | people that she is alleged to have known to be felons. |
| 2:08 PM | 21 | I'm going to focus on Count 1 of the Indictment |
| 2:08 PM | 22 | first, Judge. Excuse me. Count 1 of the Indictment -- |
| 2:08 PM | 23 | **THE COURT:** Before you get there, you said that both |
| 2:08 PM | 24 | guns were a result of a traffic stop. It looks like to me that |
| 2:08 PM | 25 | both guns were not a result of the traffic stop. There was one |

2:08PM 1    in the car, and then there's one in 2014.

2:08PM 2             MR. SHAHID:  Right.  One was in 2014 in which he was

2:08PM 3    charged in Colleton County with a failure to stop for a blue

2:08PM 4    light and other associated offenses.

2:08PM 5             THE COURT:  But in the Motion to Suppress, you said

2:08PM 6    there was two guns.  I took it to say that there were two guns

2:08PM 7    found in the car in the Motion to Suppress.  That's what you

2:08PM 8    started out saying here today.  You said he was charged with

2:08PM 9    two counts of felon in possession stemming from a -- the car

2:08PM 10   search.

2:08PM 11            MR. SHAHID:  There are two counts from two separate

2:08PM 12   cars.

2:08PM 13            THE COURT:  Okay.

2:09PM 14            MR. SHAHID:  Two separate guns.

2:09PM 15            THE COURT:  But there's only one separate Motion to

2:09PM 16   Suppress.

2:09PM 17            MR. SHAHID:  That's right.  But we're here for the

2:09PM 18   Motion to Sever.

2:09PM 19            THE COURT:  I understand.

2:09PM 20            MR. SHAHID:  Okay.  So on Count 1 of the -- for the

2:09PM 21   Motion to Sever arising on March 31st, 2018, traffic checkpoint

2:09PM 22   stop.

2:09PM 23            THE COURT:  Which is what you moved to suppress last

2:09PM 24   night at 5:00?

2:09PM 25            MR. SHAHID:  That's right.

| | |
|---|---|
| 2:09 PM | 1 |

THE COURT: Okay. Gotcha.

MR. SHAHID: In that incident, we have a statement from our co-defendant which exonerates Mr. Fishburne about the element of knowing, knowingly having possession of that firearm. So in very simple terms, the Government's standard of proof has to show the elements of there was a gun, it traveled in interstate commerce, he's a prohibited person. And then the key of all of that is that he knowingly possessed that firearm, the fourth and most critical element of this offense. If he didn't know he had the gun, he's not guilty of the offense. The statement --

THE COURT: How could he not know that he had a gun? You mean if he didn't know there was a gun in the car --

MR. SHAHID: He did not know he had the gun in the car.

THE COURT: Gotcha. Okay.

MR. SHAHID: That's why you wear the black robe, Judge, and that's why I'm over here.

But that is the key. So if the gun -- which was found underneath the driver's seat, and you could have, of course, circumstantial evidence where the Government would try to prove he had knowledge of that firearm, but her statement negates that. Her statement states -- and this is what was presented at his bond hearing back in April of 2018 when they had a bond hearing, preliminary hearing. His then lawyer,

2:10 PM 1    Ms. Penn, proposed to the Court and presented to Magistrate

2:10 PM 2    Judge Gordon that there's a statement in which she says that

2:10 PM 3    she put the gun there essentially without his knowledge.

2:11 PM 4                So that information, Judge, is highly important

2:11 PM 5    to him, because if she's called to the witness stand to testify

2:11 PM 6    about that, this jury can hear that evidence and take that

2:11 PM 7    evidence into account and weigh whether or not he's guilty or

2:11 PM 8    not guilty of that offense.  We will probably stipulate to the

2:11 PM 9    other elements, so the critical element over here is whether or

2:11 PM 10   not her testimony can come in to -- for the jury to weigh.  If

2:11 PM 11   they believe her, he would then be found not guilty of that

2:11 PM 12   offense.

2:11 PM 13             THE COURT:  Why would she testify?  Doesn't she have

2:11 PM 14   a Fifth Amendment right not to testify?

2:11 PM 15             MR. SHAHID:  That's why --

2:11 PM 16             THE COURT:  She's also recanted the statement, right?

2:11 PM 17             MR. SHAHID:  Sir?

2:11 PM 18             THE COURT:  She's also recanted the statement?

2:11 PM 19             MR. SHAHID:  Well, maybe.  I mean, that's their

2:11 PM 20   version of it.

2:11 PM 21             THE COURT:  Okay.

2:11 PM 22             MR. SHAHID:  And that goes into why I want to depose

2:11 PM 23   her, because I think if I can depose her, we can flesh this

2:11 PM 24   out, particularly the Government's allegation or claim that she

2:12 PM 25   met with the ATF agent, and the ATF agent says that she

2:12PM 1 recanted. There's no written statement from her as to that

2:12PM 2 meeting. That's just the agent's notes and his recollection of

2:12PM 3 what took place, and I'm not here to undermine that, but he's

2:12PM 4 going to say one thing. She's going to say something else.

2:12PM 5     THE COURT: Of course, if you win your suppression

2:12PM 6 motion, it's totally irrelevant.

2:12PM 7     MR. SHAHID: If we win the suppression motion, all of

2:12PM 8 this would be irrelevant.

2:12PM 9     THE COURT: Then there would be no Motion to Sever.

2:12PM 10 There wouldn't be any basis for your Motion to Sever; is that

2:12PM 11 right?

2:12PM 12     MR. SHAHID: That's right. But that's -- I mean,

2:12PM 13 this is -- that's the critical part of all of this, because it

2:12PM 14 is so important.

2:12PM 15     Now, the other way of doing this, Judge, as well

2:12PM 16 is that if you sever and require her to go first in her trial,

2:12PM 17 depending on the outcome of that trial, then we may not have a

2:12PM 18 Fifth Amendment hurdle to overcome. Not having that Fifth

2:12PM 19 Amendment hurdle, she's more free to testify, and we can

2:12PM 20 proceed with her as being a quote-unquote free witness, an

2:13PM 21 uninhibited witness at that point. I mean, that's -- the

2:13PM 22 information is highly critical to him to have her have that

2:13PM 23 testimony come into court for a jury to decide if we think it's

2:13PM 24 still available, and we think it is, because she gave a -- it

2:13PM 25 was a sworn statement.

**THE COURT:** There's a different between a sworn statement and getting right up here in front of the jury and saying that.

**MR. SHAHID:** I learned early in my career there are three stories a witness tells you: One in your office, one as you're walking across the street to the courthouse, and one on the witness stand.

**THE COURT:** And then one going home.

**MR. SHAHID:** That's the fourth one. What I meant -- that's what I meant to say with that statement. But what we know right now is what we have to live in in this world, which is this particular statement, and I want to depose her. This is I think honestly --

**THE COURT:** Rule 15 doesn't allow for depositions that -- for discovery purposes, which is essentially what you want, right?

**MR. SHAHID:** Well, if you state it like that, yes, but it also provides --

**THE COURT:** There's two ways to get the answer no. One is not to ask.

**MR. SHAHID:** Well, that's why I told my wife talking about children, what they were doing the night before, don't ask if you don't want the answer to that question.

So -- but the other way of handling this, Judge, is really to simply make her go first in this trial, see where

| | |
|---|---|
| 2:14 PM | 1 |

we are at that point, and then we can proceed.  But otherwise,
he's going to be highly prejudiced if I can't call her as a
witness.  That's where we are with all of this honestly.

     **THE COURT:**  Okay.

     **MR. SHAHID:**  That's --

     **THE COURT:**  Assuming that she went to trial, and
assuming she was found -- let's say she was found guilty for
some reason, she would still have the Fifth Amendment right not
to testify, right?

     **MR. SHAHID:**  If she's found guilty --

     **THE COURT:**  Yeah.

     **MR. SHAHID:**  Then it would depend --

     **THE COURT:**  I mean, because everybody who's found
guilty appeals their sentence, and so she still has the
presumption of innocence and all that kind of stuff, right?

     **MR. SHAHID:**  Well, I have a lot of faith in my
co-defendant counsel behind me that he will find her not
guilty, and hopefully that will take place, and if she's found
not guilty --

     **THE COURT:**  Now you're starting to pull my leg.

     **MR. SHAHID:**  Judge, we just don't -- we don't know.
I mean, all I can deal with is what I know right now, and what
I know right now, I've got a statement that helps him with his
trial, and if he's found not guilty of that because of her
statement, then that's sort of the proof is in the pudding with

2:15 PM 1    this.

2:15 PM 2            **THE COURT:**  Okay.

2:15 PM 3            **MR. SHAHID:**  And it's not some kind of made-up

2:15 PM 4    statement.  It's not something that is whimsical.  She's a

2:15 PM 5    co-defendant in a statement that goes to the heart of the

2:15 PM 6    Government's case as to Count 1 of this Indictment.  If they

2:15 PM 7    want to dismiss Count 1, then that leaves me in a different

2:15 PM 8    situation.

2:15 PM 9            **THE COURT:**  Okay.

2:15 PM 10           **MR. SHAHID:**  Which I don't think the Government is

2:15 PM 11   willing to do that.

2:15 PM 12           **THE COURT:**  Not yet.

2:15 PM 13           **MR. SHAHID:**  Not yet.

2:15 PM 14           **THE COURT:**  But, Mr. Schoen, I'll be glad to hear

2:15 PM 15   from you.

2:15 PM 16           **MR. SCHOEN:**  Your Honor, I think that with regard to

2:16 PM 17   Mr. Shahid's motion, this is a fairly straightforward, and I

2:16 PM 18   think we've laid it out pretty clearly in our brief.  I think

2:16 PM 19   that the Court's going to look, you know, at the various

2:16 PM 20   factors we've identified.  The Court's supposed to look at the

2:16 PM 21   significance of the testimony in relation to the Defendant's

2:16 PM 22   theory of defense, which I understand that that is significant,

2:16 PM 23   or at least Mr. Shahid's argument that it's significant; assess

2:16 PM 24   the extent of the prejudice; pay close attention to judicial

2:16 PM 25   administration and economy; give weight to the timeliness of

1   the motion; and consider the likelihood that the

2:16 PM   2   co-defendant --

2:16 PM   3          THE COURT:  Better slow down, Mr. Schoen.

2:16 PM   4          MR. SCHOEN:  I'm sorry, and finally consider the

2:16 PM   5   likelihood that the co-defendant's testimony could be

2:16 PM   6   impeached.  And it's that part, Judge, that I think is really

2:16 PM   7   pretty compelling; that we have a statement that she did, you

2:16 PM   8   know, author.  For the record, I'm still trying to get a copy

2:16 PM   9   of the actual written statement from Mr. Shahid.  I've

2:16 PM   10  requested it in discovery, because we think it's actually

2:16 PM   11  helpful evidence to us, because what happened was that he gets

2:17 PM   12  arrested.  She goes -- she comes in and presents this

2:17 PM   13  statement, and at the time that she presents the statement, she

2:17 PM   14  didn't have any idea of what the Government knew about her past

2:17 PM   15  dealings, and so this statement comes in here.  It's totally

2:17 PM   16  believable.  "I put the gun underneath there."  And then we

2:17 PM   17  find out, oh, wait a minute.  She's bought some guns before,

2:17 PM   18  and turns out that other car stop, that was her gun too, and he

2:17 PM   19  got caught with that.

2:17 PM   20          And, you know, as it further develops, turns out

2:17 PM   21  ballistics from that particular gun matches this other

2:17 PM   22  shooting.  It turns out that there's yet another gun that shows

2:17 PM   23  up at a crime scene, and all of that -- you know, she's

2:17 PM   24  presented with this evidence when Agent Callahan goes down to

2:17 PM   25  interview her, and at that point with the full picture of what

| | | |
|---|---|---|
| 2:17PM | 1 | the Government has, she says, "Hey, can I recant my statement?" |
| 2:17PM | 2 | So I don't think that Mr. Shahid actually has a |
| 2:17PM | 3 | strong argument that this is some sort of deeply necessary |
| 2:17PM | 4 | testimony for his client. |
| 2:18PM | 5 | That being said, I do have some concerns |
| 2:18PM | 6 | regarding Mr. Geel's motion, and I think it would -- I don't |
| 2:18PM | 7 | know if you want me to address those or have him argue and -- |
| 2:18PM | 8 | THE COURT: Let him argue, and we'll see. |
| 2:18PM | 9 | MR. SCHOEN: Okay. |
| 2:18PM | 10 | THE COURT: Yes, sir? |
| 2:18PM | 11 | MR. GEEL: Thank you, Your Honor. May I approach |
| 2:18PM | 12 | briefly? I have a document I'd like to present to the Court |
| 2:18PM | 13 | just because I'm covering so many -- may I approach, Your |
| 2:18PM | 14 | Honor? |
| 2:18PM | 15 | THE COURT: Sure. |
| 2:18PM | 16 | MR. GEEL: Just for the purposes of keeping it |
| 2:18PM | 17 | straight, all these different alleged incidents that we're |
| 2:18PM | 18 | talking about, Your Honor. |
| 2:18PM | 19 | And Mr. Shahid has already kind of covered what |
| 2:18PM | 20 | is the center column here, the Smith & Wesson .40 caliber. |
| 2:18PM | 21 | There are essentially three firearms at issue in this case: |
| 2:19PM | 22 | The first being the Bersa 9 millimeter, the second being the |
| 2:19PM | 23 | firearm that was just discussed, and the third being the |
| 2:19PM | 24 | Jimenez 9 millimeter. |
| 2:19PM | 25 | The top row here is essentially the purchase |

date of each of these -- alleged purchase date of each of these firearms.  The Government's position would be that Ms. Ellison purchased them on these respective dates.

THE COURT:  What does the paperwork say?

MR. GEEL:  I'm sorry?

THE COURT:  What does the paperwork say?

MR. GEEL:  The paperwork I have appears to suggest that these are correct.

THE COURT:  So the date purchased, Ms. Ellison purchased all three of these?  That's pretty clear?

MR. GEEL:  Yes, that's what the paperwork looks like to me, yes.  And so then the following row is essentially a couple of intervening incidents that happened with the -- with respect to the first two firearms, the Bersa and the Smith & Wesson .40 caliber.

And then, of course, the bottom row, these are the dates upon which each of these respective firearms were then recovered by law enforcement.

So as you can see, the Bersa, the date range there is incidents taking place between 2007 and 2012, and then it appears as though the Government's Superseding Indictment kind of ropes that in now as substantive evidence, and then the latter two firearms are in 2013 through 2018.

The concerns that we've raised in our severance motion are a little bit different from Mr. Shahid's.

2:20PM 1 Essentially the allegation here is going to be that, as we've

2:20PM 2 said, Ms. Ellison purchased these respective firearms on these

2:20PM 3 dates.

2:20PM 4 With respect to the two intervening incidents,

2:20PM 5 both the May 2011 shooting with the Bersa and the November 2015

2:20PM 6 shooting with the Smith & Wesson .40 caliber, neither of those

2:20PM 7 incidents involved Ms. Ellison. There's no allegation that she

2:20PM 8 was there. In other words -- I won't speak for the Government,

2:20PM 9 but I would anticipate that their theory would be that

2:20PM 10 Ms. Ellison's role in this conspiracy had already come to

2:20PM 11 fruition prior to both of those shootings. In other words, the

2:20PM 12 firearms at issue had been transferred from her possession. At

2:20PM 13 least I anticipate that would be the Government's theory.

2:20PM 14 And then, of course, the same is true of the

2:20PM 15 dates on which each of these firearms are recovered. The Bersa

2:21PM 16 was recovered in 2012 pursuant to a failure to stop and a foot

2:21PM 17 pursuit with an unknown male. So today we still don't know who

2:21PM 18 that was.

2:21PM 19 The March 31st, 2018 incident was, of course, as

2:21PM 20 Mr. Shahid has talked about with his client, Mr. Fishburne,

2:21PM 21 where he was found in a traffic stop with a firearm in the car

2:21PM 22 along with marijuana.

2:21PM 23 And then as to the May 2nd, 2014, when the

2:21PM 24 9 millimeter Jimenez was recovered, that was also a failure to

2:21PM 25 stop, and then -- Mr. Fishburne, with another gentleman in the

2:21 PM
2:21 PM
2:21 PM
2:21 PM
2:21 PM
2:21 PM
2:21 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM
2:22 PM

1  car and a separate firearm that's not related to this, has no
2  role in this Indictment any way.
3  So essentially what you have is a situation where all
4  of the sort of second and third rows of this grid that I've set
5  out involve additional criminal conduct.  The 2015 shooting was
6  the -- I'm sorry, I forgot to touch on that one.  The 2015
7  shooting in November with the Smith & Wesson .40 caliber was a
8  shooting after a drag race that is alleged to have --
9  Mr. Fishburne is alleged to have been involved in that.  Again,
10  Ms. Ellison not involved in that particular shooting, but Your
11  Honor may recall that that particular incident was the subject
12  of an Indictment in Walterboro with the Cowboys.
13  And then with the May 2011 shooting, sort of
14  similar rough sketch of the facts where there's a shootout
15  between two groups of people at a car wash in Walterboro or
16  thereabouts, and so essentially what you have is significant
17  additional criminal conduct that will be illustrated.  I
18  believe the Government will want to get into all of this in
19  illustrating how the firearms came to be in the Government's
20  possession and, again, not involving Ms. Ellison at all.
21  If we sort of had things our way, which, of course, I
22  understand is a big if, if we were going to trial separately,
23  we would essentially cede stipulations to all the -- the second
24  and third rows of this chart.  I mean, this doesn't involve
25  Ms. Ellison at all.

We don't dispute that the firearms are now in the Government's possession. We don't dispute most of the circumstances under which they came to be in the Government's possession now.

What we would strenuously seek to avoid the jury hearing anything about is the new substantive criminal conduct that gave rise to the firearms being discovered:  Two gang-related shootings, two incidents of failure to stop for a blue light, an incident with Mr. Fishburne allegedly possessing marijuana.  You know, again, if we were tried separately, we would seek to limit this stuff significantly.

Now, of course, these boxes are precisely where Mr. Shahid's case is going to be tried.  He is going to argue the circumstances under which the firearms allegedly came to be in his client's possession, and he'll dispute that his client knew about it.  So we're essentially going to be fighting on very different terrain here, I anticipate.

And one thing, this is a very fact-specific inquiry, so I don't want to rely on the cases in my motion as though they are controlling.  Many of them are out-of-circuit, but I'll just point Your Honor to the <u>Cortinas</u> case from the Fifth Circuit which we cited which involved a gang shooting in which the -- similar circumstances which the Court indicated that presenting testimony of a gang-style shooting that didn't involve two of the Defendants was highly inflammatory, and the

| | | |
|---|---|---|
| 2:24 PM | 1 | way I see this evidence, it looks as though we've got very |
| 2:24 PM | 2 | similar circumstances here. |
| 2:24 PM | 3 | And to change gears a little bit, Your Honor, one |
| 2:24 PM | 4 | other issue that I outlined in my motion is the concern that we |
| 2:24 PM | 5 | have as far as Mr. Fishburne's criminal history.  Of course, |
| 2:24 PM | 6 | that's going to be an issue that would need to be touched on |
| 2:24 PM | 7 | here as it's a sort of element.  The Government has requested |
| 2:24 PM | 8 | stipulations to the fact that Mr. Fishburne is a convicted |
| 2:24 PM | 9 | felon, but also requested a stipulation to my client's |
| 2:24 PM | 10 | knowledge of same, which is of course an element here, and the |
| 2:24 PM | 11 | reason that they want that stipulation is -- |
| 2:24 PM | 12 | THE COURT:  You mean knowledge that he's a convicted |
| 2:24 PM | 13 | felon? |
| 2:24 PM | 14 | MR. GEEL:  Correct.  And, of course, I understand why |
| 2:24 PM | 15 | Mr. Shahid and Mr. Schoen would both seek that kind of |
| 2:25 PM | 16 | stipulation from me, because they want to limit the extent to |
| 2:25 PM | 17 | which the jury hears about Mr. Quentin Fishburne's history, |
| 2:25 PM | 18 | whereas -- I mean, we can't stipulate to that.  It is an |
| 2:25 PM | 19 | element of the offense.  I don't think I would be representing |
| 2:25 PM | 20 | my client zealously if I was agreeing to stipulate to something |
| 2:25 PM | 21 | that's contested and an element of the offense, and the fact |
| 2:25 PM | 22 | that we are at odds as to whether to make that stipulation |
| 2:25 PM | 23 | demonstrates the conflict between our respective positions. |
| 2:25 PM | 24 | There's also a -- the -- one of -- I'm not sure |
| 2:25 PM | 25 | if it's the only, but at least one of Mr. Fishburne's prior |

2:25PM 1  felony convictions is a Georgia case involving the use of a

2:25PM 2  firearm, and his -- his background and the constructive

2:25PM 3  possession at least of the firearm on both dates, the March

2:25PM 4  31st traffic stop in 2018 and the May 2nd traffic stop in 2014,

2:25PM 5  I don't know how the evidence is going to come out at trial,

2:25PM 6  but it's conceivable that essentially suggesting that

2:26PM 7  Mr. Fishburne played some role in procuring the firearms

2:26PM 8  without Ms. Ellison's knowledge could plausibly be an argument

2:26PM 9  that could be inferred from the facts of the case.

2:26PM 10        That's the thing that I -- I anticipate I would

2:26PM 11  be prohibited from making an argument that I would be unable to

2:26PM 12  make at this trial because of the fact that we're -- if we were

2:26PM 13  to go to trial together is what I mean.

2:26PM 14        So all of these things, you know, they have a

2:26PM 15  significant impact on our need for severance.  I mean, these

2:26PM 16  all tie to very, very important trial rights, you know, our due

2:26PM 17  process right to present a full defense.  A lot of the cases

2:26PM 18  talk about the possibility of the antagonistic defenses which

2:26PM 19  there is a distinct possibility that there could be

2:26PM 20  antagonistic defenses here.

2:26PM 21        And, of course, I have the same issue that

2:26PM 22  Mr. Shahid does, which is to say that I don't know if his

2:26PM 23  client is going to be testifying or what he would say.  So we

2:26PM 24  could end up suddenly finding ourselves with antagonistic

2:26PM 25  defenses when that was sort of unanticipated prior to trial

| | | |
|---|---|---|
| 2:26 PM | 1 | just because we don't know what each other's clients are going |
| 2:27 PM | 2 | to say. |
| 2:27 PM | 3 | THE COURT: That's not abnormal. That's usual. |
| 2:27 PM | 4 | MR. GEEL: It's certainly not. |
| 2:27 PM | 5 | THE COURT: That's every time. |
| 2:27 PM | 6 | MR. GEEL: The unique circumstances of the case and |
| 2:27 PM | 7 | in light of my client's statement and in light of the fact |
| 2:27 PM | 8 | that, as I said, the bulk of this evidence, the majority of the |
| 2:27 PM | 9 | evidence that we're going to be hearing will be dealing with |
| 2:27 PM | 10 | Mr. Fishburne's conduct, alleged conduct and have nothing to do |
| 2:27 PM | 11 | with my client, at least not her direct participation. |
| 2:27 PM | 12 | And then the last thing that I'll bring up is |
| 2:27 PM | 13 | all the issues that Mr. Shahid has brought to the Court's |
| 2:27 PM | 14 | attention as far as whether Ms. Ellison testifies, this is also |
| 2:27 PM | 15 | not an abnormal thing, but this would burden her election to |
| 2:27 PM | 16 | testify or not testify. She has the statement out there, and |
| 2:27 PM | 17 | she will be impeached by Mr. Shahid, and she will be impeached |
| 2:27 PM | 18 | by Mr. Schoen, you know, either way, which wouldn't be the case |
| 2:27 PM | 19 | if, you know, we went to trial separately. I mean, we'd have |
| 2:27 PM | 20 | to deal with the Government potentially impeaching her, but we |
| 2:27 PM | 21 | wouldn't have to fight that war on two fronts in terms of both |
| 2:27 PM | 22 | of them attempting to show my client to be not telling the |
| 2:27 PM | 23 | truth during her testimony. |
| 2:28 PM | 24 | So I think that that's all I have as far as |
| 2:28 PM | 25 | additional grounds for severance, Your Honor. Thank you. |

<div style="font-family: monospace;">

2:28PM   1        **THE COURT:** So if you went to trial together on this

2:28PM   2   Superseding Indictment, your client would not testify, right?

2:28PM   3        **MR. GEEL:** Well, I can't say at this time whether she

2:28PM   4   would or she wouldn't, but the thing is all -- and that's not

2:28PM   5   because I'm being cagey. I mean, one just doesn't know

2:28PM   6   until --

2:28PM   7        **THE COURT:** Let's say she's in court, and Mr. Shahid

2:28PM   8   calls her.

2:28PM   9        **MR. GEEL:** Okay.

2:28PM   10        **THE COURT:** She's going to take her Fifth Amendment

2:28PM   11   rights, right?

2:28PM   12        **MR. GEEL:** I would likely advise her to do that, yes,

2:28PM   13   if it was in my election.

2:28PM   14        **THE COURT:** If you didn't elect to advise her to do

2:28PM   15   that, you might want to call your insurer.

2:28PM   16        **MR. GEEL:** Sure. I agree. I think that that would

2:28PM   17   be a pretty bad day for me, but I guess I'm thinking about it

2:28PM   18   in terms of -- the question is whether I would want her to

2:28PM   19   testify or not during the trial, but, yeah. I mean, I don't

2:28PM   20   think I'd be doing my job if under any circumstances anyone

2:28PM   21   sought to get her to talk about this case other than me putting

2:28PM   22   her up to testify at trial. I think that's the only -- those

2:28PM   23   are the only circumstances that I would be able to keep my bar

2:28PM   24   license.

2:29PM   25        **THE COURT:** We don't want you to lose that, okay?

</div>

2:29PM  1          MR. GEEL:  I appreciate that, Judge.  That's all I

2:29PM  2   have as far as severance, Judge.

2:29PM  3          THE COURT:  Okay.  Great.  Thank you.  And you're

2:29PM  4   opposed to the deposition?

2:29PM  5          MR. GEEL:  Yes, sir.

2:29PM  6          THE COURT:  Okay.  Just want to make sure.  Cover all

2:29PM  7   the bases.  Yes, sir, Mr. Schoen?

2:29PM  8          MR. SCHOEN:  So, Judge, I'm going to concede that

2:29PM  9   this is a closer call.  I think that there are some complicated

2:29PM 10   issues.  I think the biggest problem we've got is that we don't

2:29PM 11   really have much of anything in the way of solid evidence --

2:29PM 12   it's the defense's burden to show that severance is

2:29PM 13   appropriate, and what we have here is a lot of speculation

2:29PM 14   about what may or may not happen without a whole lot of facts.

2:29PM 15   So when you look at Mr. Geel's motion, you know, look at these

2:29PM 16   various enumerated categories of potentially problematic

2:30PM 17   evidence, one is Ellison's need place Fishburne's character in

2:30PM 18   issue.  That's number 4, and I could certainly see how that

2:30PM 19   could become very antagonistic, but we haven't got a 404(b)

2:30PM 20   notice of any intent to offer that type of evidence.  We

2:30PM 21   haven't received a shred of reciprocal discovery suggesting any

2:30PM 22   of these things, listing witnesses.  We don't have any --

2:30PM 23   there's just nothing, nothing other than the, "This

2:30PM 24   theoretically could happen," and I think that leaves us in a

2:30PM 25   pretty problematic position in being able to assess, and quite

| | |
|---|---|
| 2:30PM | 1 |
| 2:30PM | 2 |
| 2:30PM | 3 |
| 2:30PM | 4 |
| 2:30PM | 5 |
| 2:31PM | 6 |

candidly, Judge, I don't want to get to trial and have -- you
know, be blind-sided by issues that they're going to then raise
on appeal that could be significant, but we just -- we don't
have any of the information that would enable us or the Court
to evaluate whether or not this is a good decision.  Since it's
their burden, I mean, I think that weighs against severance.

But, on the other hand, Your Honor, I do want to
be very candid with the Court that I do see issues that -- you
know, there are going to be some thorny evidentiary issues if
these two cases are tried together, things like -- I will be
very direct.  We do intend -- we will argue that if Ms. Ellison
won't stipulate to knowledge or that she knows about
Mr. Fishburne's felonies, then we as the Government in order to
meet our burden have to be able to get into why she would know,
and part of that reason is because this is -- you know, he
didn't get a little tiny baby felony.  He spent 10 years in
prison for killing his cousin when he was 14, and that's a
fairly inflammatory significant allegation.

So being very candid, those are the issues I
see.  I trust the Court to make the right decision, but I do
think that we need more information from the defense for the
Court to make that decision.

THE COURT:  Mr. Geel, let me ask you a question.
Your motion -- Mr. Shahid told me that if in fact Count 1 was
not tried, that that would solve his problems with the separate

| | |
|---|---|
| 2:32PM | 1 |
| 2:32PM | 2 |
| 2:32PM | 3 |
| 2:32PM | 4 |
| 2:32PM | 5 |
| 2:32PM | 6 |
| 2:32PM | 7 |
| 2:32PM | 8 |
| 2:32PM | 9 |
| 2:32PM | 10 |
| 2:32PM | 11 |
| 2:33PM | 12 |
| 2:33PM | 13 |
| 2:33PM | 14 |
| 2:33PM | 15 |
| 2:33PM | 16 |
| 2:33PM | 17 |
| 2:33PM | 18 |
| 2:33PM | 19 |
| 2:33PM | 20 |
| 2:33PM | 21 |
| 2:33PM | 22 |
| 2:33PM | 23 |
| 2:33PM | 24 |
| 2:33PM | 25 |

trials, because there wouldn't be any antagonistic defenses.
How about if that happens, you're -- do you still have a Motion
to Sever?

       **MR. GEEL:**  Yes, sir, Your Honor.  So Count 1 deals
with the .40 caliber traffic stop.  We would still be left with
the issues relating to the Bersa firearm, the -- and the
shooting, the drag race shooting.  I mean, those are -- it
would -- it would lessen the concern to be sure, because a lot
of the antagonism between Ms. Ellison and Mr. Fishburne does
deal with the most recent traffic stop, but it doesn't get past
the main area of concern I have, which is to say the bulk of
this trial is going to be allegations about Mr. Fishburne's
alleged involvement in -- and it raises the specter of all
kinds of different things, gang activity, and I simply don't
know the extent to which the Government will want to get into
that, not -- just because we haven't sort of crossed that
bridge yet.  And -- so I guess that's my answer.  It would
alleviate the problem somewhat, but it wouldn't cure it
completely.

       **THE COURT:**  Okay.  Great.  Thank you.

       **MR. SCHOEN:**  Judge, I don't want to handicap my
suppression arguments --

       **THE COURT:**  That's all right.

       **MR. SCHOEN:**  -- by -- I don't want my suppression
argument to be damaged by the possibility of --

| | | |
|---|---|---|
| 2:33PM | 1 | THE COURT: You're going to respond to that by next |
| 2:33PM | 2 | Monday -- next Wednesday. |
| 2:33PM | 3 | MR. SCHOEN: Next Wednesday. |
| 2:33PM | 4 | THE COURT: Yeah, yeah, and, you know, I've seen |
| 2:33PM | 5 | suppression motions, and I've seen suppression motions. This |
| 2:33PM | 6 | looks like a pretty good one. Okay? |
| 2:33PM | 7 | MR. SCHOEN: Your Honor, I mean -- |
| 2:33PM | 8 | THE COURT: I mean, I've only heard one side. |
| 2:34PM | 9 | MR. SCHOEN: Certainly. |
| 2:34PM | 10 | THE COURT: I mean, the facts that he put in there |
| 2:34PM | 11 | may not be correct, and so I don't know what the facts are, and |
| 2:34PM | 12 | if you -- I don't know if you're dealing with the Walterboro |
| 2:34PM | 13 | Police Department. They're a professional crowd, but there's a |
| 2:34PM | 14 | lot of people that come and leave these things after a few |
| 2:34PM | 15 | years, and I don't know whether the witnesses are available or |
| 2:34PM | 16 | anything like that. |
| 2:34PM | 17 | MR. SCHOEN: I believe that they are available. |
| 2:34PM | 18 | THE COURT: Okay. Yeah. All right. So we'll cross |
| 2:34PM | 19 | that bridge when we come to it, certainly. |
| 2:34PM | 20 | MR. GEEL: Your Honor, may I add one thing that I |
| 2:34PM | 21 | neglected to mention? Is that -- so as Mr. Schoen just said, |
| 2:34PM | 22 | we -- once we have determined our 404(b) notice. Now, as far |
| 2:34PM | 23 | as dealing with today, I think I anticipated most of which |
| 2:34PM | 24 | column this evidence would fall into as direct evidence versus |
| 2:34PM | 25 | 404(b), but there is some potential 404(b) evidence out |

2:34 PM 1 there -- or at least evidence that I feel would not be

2:34 PM 2 admissible as direct in evidence this case but maybe this Court

2:34 PM 3 will be -- that could give rise to additional severance issues,

2:34 PM 4 which is to say that 404(b) that deals only with Mr. Fishburne.

2:34 PM 5 So -- and anyways, I thought I would just flag that, because we

2:35 PM 6 haven't crossed that bridge yet either, and that could bring up

2:35 PM 7 even more issues.

2:35 PM 8         **THE COURT:** Sure. Okay. All right. Anything else,

2:35 PM 9 Mr. Geel or Mr. Shahid?

2:35 PM 10         **MR. GEEL:** No, sir.

2:35 PM 11         **MR. SHAHID:** He covered what I was going to say in

2:35 PM 12 addition to the 404(b). I haven't had a chance to go through

2:35 PM 13 what's out there, but that may be adding more pile-on to our

2:35 PM 14 concerns for the severance. So I have an idea what's out

2:35 PM 15 there, and I think I kind of alluded to some of these issues

2:35 PM 16 with these other guns being involved. So that may be another

2:35 PM 17 problematic issue to address. I think this is where we are

2:35 PM 18 right now.

2:35 PM 19         And I can proffer to the Court her statement,

2:35 PM 20 and I think it has substance to it that is important to

2:35 PM 21 Mr. Fishburne's defense, and, I mean, it clearly indicates that

2:35 PM 22 he wouldn't -- he did not know that she had -- what she had

2:35 PM 23 done, and that's sort of the sum and substance of what I would

2:36 PM 24 hope she would say if she was called to the witness stand.

2:36 PM 25         **THE COURT:** Okay. All right. Anything else?

**MR. SHAHID:** That's all, Judge. We did file a Motion for a Bond. I don't know if you want a magistrate judge to hear that instead.

**THE COURT:** Yeah. I mean, third time is usually not the charm, all right?

**MR. SHAHID:** I understand.

**THE COURT:** Unless there's some changed circumstances, I would imagine the magistrate judge is not going to change his or her opinion.

**MR. SHAHID:** Okay.

**THE COURT:** Are there any changed circumstances?

**MR. SHAHID:** Well, could I address it at that point?

**THE COURT:** Yeah, you can address it at that point. Yeah, sure.

Okay. All right. I'm going to deny your motion for a deposition. I think it's purely discovery purposes as opposed to the purposes for which this rule was promulgated. I'm going to take under advisement the severance motions, because severance motions a lot of time will make little difference after we decide the suppression motion, because if the suppression motion is granted, then Mr. Shahid doesn't have any severance problems, and he can go first, okay? If it's not granted, then we'll cross that bridge when we come to it, but we're going to decide that hopefully the first part not next week, but the week after next, okay?

2:37PM 1          All right.  Anything else?

2:37PM 2          MR. SHAHID:  That's it for us, Your Honor.  Thank

2:37PM 3 you.

2:37PM 4          THE COURT:  All right.  Thank you very much.

2:37PM 5          MR. SHAHID:  Thank you, Judge.  Thank you for your

2:37PM 6 patience.

7                    (End of proceedings.)

8          *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

9               UNITED STATES DISTRICT COURT

10            MIDDLE DISTRICT OF SOUTH CAROLINA

11

12               REPORTER TRANSCRIPT CERTIFICATE

13      I, Tana J. Hess, Official Court Reporter for the United
   States District Court, Middle District of Florida, certify,
14 pursuant to Section 753, Title 28, United States Code, that the
   foregoing is a true and correct transcription of the
15 stenographic notes taken by the undersigned in the
   above-entitled matter (Pages 1 through 28 inclusive) and that
16 the transcript page format is in conformance with the
   regulations of the Judicial Conference of the United States of
17 America.

18

19      _____
        Tana J. Hess, CRR, RMR, FCRR
20      Official Court Reporter
        United States District Court
21      Middle District of Florida
        Tampa Division
22      Date:  February 1, 2022

23

24

25

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
Middle District of Florida