IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

* * * * * * * * * * * * * * * * *
                                 *
UNITED STATES OF AMERICA         *
                                 *   Case No. 2:18-cr-780
vs.                              *
                                 *   March 3, 2020
QUENTIN JOHN FISHBURNE           *
                                 *
* * * * * * * * * * * * * * * * *

REPORTER'S OFFICIAL TRANSCRIPT OF THE
JURY TRIAL - DAY 2 HELD BEFORE
THE HONORABLE DAVID C. NORTON
UNITED STATES DISTRICT JUDGE
MARCH 3, 2020


APPEARANCES:


FOR THE GOVERNMENT:

        Christopher Braden Schoen
        Janet Carra Henderson
        US Attorney's Office (Chas)
        151 Meeting Street
        Suite 200
        Charleston, SC  29401
        843.727.4381


FOR DEFENDANT FISHBURNE:

        Albert Peter Shahid Jr.
        Shahid Law Office
        89 Broad Street
        Charleston, SC  29401
        843.853.4500

1    Official Court Reporter:        Tana J. Hess, CRR, FCRR, RMR
                                     U.S. District Court Reporter
2                                    Middle District of Florida
                                     Tampa Division
3                                    801 N. Florida Avenue
                                     Tampa, FL  33602
4                                    813.301.5207
                                     tana_hess@flmd.uscourts.gov
5

6    Proceedings recorded by mechanical stenography using
     computer-aided transcription software.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|        |    |                                                          |
|--------|----|----------------------------------------------------------|
| 9:49AM | 1  | (Call to order of the Court.)                            |
| 9:49AM | 2  | THE COURT: All right. Take your seats. Thank you.        |
| 9:50AM | 3  | We got your amendments, and we accommodated everybody's  |
| 9:50AM | 4  | additions, and we're not going to do the obstruction charge, |
| 9:50AM | 5  | because there's no evidence whatsoever of any obstruction by |
| 9:50AM | 6  | Mr. Fishburne.                                           |
| 9:50AM | 7  | MR. SCHOEN: Yes, Your Honor. I think that in -- I        |
| 9:50AM | 8  | accept the Court's ruling, but I think that in -- in     |
| 9:50AM | 9  | establishing a conspiracy, we have to show criminal intent for |
| 9:50AM | 10 | both Ms. Ellison and Mr. Fishburne, and so what I would argue |
| 9:50AM | 11 | to the Court and ask just as a general principle is that we be |
| 9:50AM | 12 | allowed to use some of this evidence to establish her criminal |
| 9:50AM | 13 | intent, not his, and that that be delineated using a limiting |
| 9:50AM | 14 | instruction.                                            |
| 9:50AM | 15 | THE COURT: I guess you can argue that.                   |
| 9:50AM | 16 | MR. SCHOEN: I can argue the fact that she came in        |
| 9:50AM | 17 | and covered the stuff up?                                |
| 9:50AM | 18 | THE COURT: Yeah.                                         |
| 9:50AM | 19 | MR. SCHOEN: Okay. Judge there's one other issue I        |
| 9:51AM | 20 | do want to bring to the Court's attention, and it's never fun |
| 9:51AM | 21 | when you discover something that you should have discovered a |
| 9:51AM | 22 | long time ago. When I was doing my legal research this morning |
| 9:51AM | 23 | when we were doing the last few things on the jury charge, I |
| 9:51AM | 24 | noticed a concept called Wharton's Rule that essentially |
| 9:51AM | 25 | holds --                                                 |

|   |   |
|---|---|
| 9:51AM | 1 |

**MR. SHAHID:** I remember that too.

**MR. SCHOEN:** That essentially holds that you cannot convict a person of a conspiracy if the -- if the underlying crime is a crime that requires two people to commit, and the conspiracy you're alleging is just those two people, and so in some ways I am concerned about us arguing that the transfer of the firearm from Ms. Ellison to Mr. Fishburne is a basis for a conspiracy. I think we've alleged in addition to that straw purchasing, and I think that -- that's a crime that requires one person. It's her intent.

**THE COURT:** Okay.

**MR. SCHOEN:** And so my suggestion to the Court -- obviously if Your Honor thinks otherwise, I'm happy to yield to superior legal knowledge.

**THE COURT:** I don't know about that.

**MR. SCHOEN:** But I don't -- I mean, I think our obligation as the Government is to be forthright with the Court as to what we think the law is, and I'm concerned that a conviction based on -- or a conspiracy conviction based on the idea that she transferred a gun to him and the two of them have to agree about that, it's almost -- it's almost difficult to conceive of how you would transfer a gun to somebody without conspiring to transfer a gun to somebody, because it requires you to say, "Here you go," and "I agree."

**THE COURT:** Isn't there a lot of law on that about

| | |
|---|---|
| 9:52AM | 1 |

hand-to-hand purchases are not -- is not a conspiracy?  You

give me crack.  That's not a conspiracy.

          MR. SCHOEN:  That's not a conspiracy, right, because

it requires two people and only two people.  So I think what

we'd ask the Court to do to protect the record is to give

instructions only on the straw purchasing --

          THE COURT:  Okay.

          MR. SCHOEN:  -- portion of the conspiracy, if that's

agreeable.

          MR. SHAHID:  Or just dismiss the conspiracy.  That

puts us -- I was hoping you were heading in that direction.

Too optimistic.

          THE COURT:  I was thinking that, too.  We'll just

delete the thing about -- only have the straw purchase.

Looking back at the --

          MR. SCHOEN:  Judge, I apologize for that.

          THE COURT:  That's all right.

          MR. SCHOEN:  That we didn't get that earlier.

          THE COURT:  No, that's no problem.  All right.  If

you look at the -- page 12, bottom of page 13, I think you want

me to delete 1A.

          MR. SCHOEN:  Delete A.

          THE COURT:  Delete 1 --

          MR. SCHOEN:  1A.

          THE COURT:  On line 21, delete lines 21, 22 on page

| | | |
|---|---|---|
| 9:54 AM | 1 | 13, and 1 and 2 on page 14. |
| 9:54 AM | 2 |       **MR. SCHOEN:** Correct, as well as on page 12, the end |
| 9:54 AM | 3 | of line 21, it starts, "Title 18 USC Section 922(d)" -- |
| 9:54 AM | 4 |       **THE COURT:** Okay. |
| 9:54 AM | 5 |       **MR. SCHOEN:** -- "makes it a crime to sell or |
| 9:54 AM | 6 | otherwise transfer." |
| 9:54 AM | 7 |       **THE COURT:** All right. Delete -- |
| 9:54 AM | 8 |       **MR. SHAHID:** Go back to that again, Chris. I'm |
| 9:54 AM | 9 | sorry. |
| 9:54 AM | 10 |       **MR. SCHOEN:** That's bottom of page 12, line 19 -- or |
| 9:54 AM | 11 | I'm sorry. Bottom of page 12, end of 21 it starts, "Title 18 |
| 9:54 AM | 12 | USC Section 922 makes it a crime to sell or otherwise |
| 9:54 AM | 13 | transfer." |
| 9:54 AM | 14 |       **MR. SHAHID:** We're going to strike that? |
| 9:54 AM | 15 |       **THE COURT:** Strike lines -- last part of line 21, |
| 9:54 AM | 16 | line 22, 23, 24, and the first six words in -- on page 13, line |
| 9:55 AM | 17 | 1? |
| 9:55 AM | 18 |       **MR. SCHOEN:** Yes. And then on -- |
| 9:55 AM | 19 |       **MR. SHAHID:** You're going to strike all of line 1 on |
| 9:55 AM | 20 | page 13? |
| 9:55 AM | 21 |       **MR. SCHOEN:** Up until the point where it says, "Title |
| 9:55 AM | 22 | 18," end that first clause. |
| 9:55 AM | 23 |       **MR. SHAHID:** Got it. |
| 9:55 AM | 24 |       **MR. SCHOEN:** And then in Count 2 on page 13, |
| 9:55 AM | 25 | "Unlawfully knowingly" -- "knowingly and willfully violate," |

1    strike out Section 922(d) out of line 10, strike out "to sell

2    or otherwise transfer firearms and ammunition."

3            MR. SHAHID:  Still on line 10?

4            MR. SCHOEN:  Starting on line 10 and carrying through

5    line 13 after -- up to the words "one year".

6            THE COURT:  So that charge will say, "To execute a

7    scheme to knowingly and willfully violate Section 922(a)(6);

8    that is, to make false statement to licensed firearm dealers in

9    connection with acquisition of firearms."

10           MR. SCHOEN:  Yes, Your Honor.

11           THE COURT:  Okay.  Any problem with that?

12           MR. SHAHID:  No, sir.

13           THE COURT:  Okay.

14           MR. SCHOEN:  Trying to see if there's any other

15    references.  There is a portion that I asked the Court to add

16    in, and I think that that also gave an example of them

17    transferring firearms, and if that was added that would also

18    need to be removed.

19           THE COURT:  16.  16, line 19?

20           MR. SHAHID:  On page 19?

21           THE COURT:  Page 16, line 19.

22           MR. SCHOEN:  On page 16, line 19.

23           MR. SHAHID:  So that whole line 19 comes out?

24           THE COURT:  Through 22, I think.

25           MR. SHAHID:  Through the word "himself" on 22?

9:57AM 1    **THE COURT:** So if I understand correctly, the charge

9:57AM 2    starting on line 17 on page 16, "In your consideration of the

9:57AM 3    evidence, you should determine whether or not Mr. Fishburne

9:57AM 4    knowingly took part in a conspiracy to make false statements

9:57AM 5    to" -- so we're deleting lines 19, 20, 21, 22, and the first

9:57AM 6    half of line 23.

9:57AM 7    **MR. SCHOEN:** Yes.  And then it continues onto the

9:57AM 8    next page.

9:57AM 9    **THE COURT:** Okay.

9:57AM 10   **MR. SCHOEN:** "In connection with the acquisition of

9:57AM 11   firearms, the Government can establish the conspiracy by

9:57AM 12   showing an agreement between Mr. Fishburne and Ms. Ellison,"

9:58AM 13   and then beginning that next -- that next word, "that

9:58AM 14   Ms. Ellison," on page 17, line 3, strike out, "would transfer

9:58AM 15   firearms to Mr. Fishburne knowing he was prohibited from

9:58AM 16   possessing them," and it would instead say, "An agreement

9:58AM 17   between Mr. Fishburne and Ms. Ellison," and it would pick up on

9:58AM 18   line 5, "that Ms. Ellison would make false statements with

9:58AM 19   regard to the acquisition of firearms by, for example,

9:58AM 20   indicating that she was the actual purchaser of the firearm

9:58AM 21   when, in fact, she was buying the firearm for Mr. Fishburne."

9:58AM 22   **THE COURT:** Okay.

9:58AM 23   **MR. SHAHID:** So beginning on line 2, that first full

9:58AM 24   sentence?

9:58AM 25   **THE COURT:** The last three words in the first

1    sentence on line 2.

2    **MR. SCHOEN:** It's line 3, the last three words, "that

3    Ms. Ellison would transfer firearms to Mr. Fishburne, knowing

4    he was prohibited from possessing them or an agreement." That

5    all would be stricken.

6    **THE COURT:** Okay. So it's going to say, "The

7    Government can establish a conspiracy by showing an agreement

8    between Mr. Fishburne and Ms. Ellison that Ms. Ellison would

9    make false statements," et cetera, et cetera, et cetera.

10    **MR. SCHOEN:** Yes, Your Honor.

11    **THE COURT:** Okay. Okay. And we'll change the word

12    on line 10 from "either" to "this," so there's not an "either"

13    anymore.

14    **MR. SCHOEN:** On line 10?

15    **THE COURT:** Line 10.

16    **MR. SCHOEN:** Correct, Your Honor.

17    **THE COURT:** "Beyond a reasonable doubt with respect

18    to this conspiracy, you should find."

19    **MR. SCHOEN:** Also, Your Honor, on the description of

20    Count 2, page 12, line 17, just changing the title of the

21    heading.

22    **THE COURT:** Okay. What line are you talking about on

23    page 12?

24    **MR. SCHOEN:** On page 12, Count 2, Line 17 is the

25    heading. If you just remove the words to "sell or transfer

1 firearms to a felon."

2        **THE COURT:** Okay. Conspiracy to make false

3 statements only, yeah.

4        **MR. SCHOEN:** I think that's it. Thank you for

5 accommodating the changes.

6        **THE COURT:** No problem. Thank you for bringing that

7 up.

8        **MR. SCHOEN:** Yes, Your Honor.

9        **THE COURT:** That's what you're supposed to do.

10        **MR. SHAHID:** And, Judge --

11        **THE COURT:** That's what Mr. Bourne taught you to do.

12        **MR. SCHOEN:** Yes, he did.

13        **MR. SHAHID:** And then I haven't read the whole thing

14 yet, but you did say we included the language about that you

15 have to have a conspiracy of two or more people? I just

16 haven't read it. I'm just double-checking.

17        **THE COURT:** Let me make sure, because you can't

18 conspire with yourself. I think if you look at page 13, line

19 18, it says that "two or more persons entered into an unlawful

20 agreement starting," yadda, yadda, yadda.

21        **MR. SHAHID:** That's good.

22        **THE COURT:** Okay.

23        **MR. SHAHID:** Thank you.

24        **THE COURT:** All right. Anything else?

25        **MR. SCHOEN:** One moment, Your Honor. I'm --

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
| 10:02AM | 1  | (Pause.)                                                           |
| 10:02AM | 2  | **MR. SCHOEN:** Your Honor, with regard -- there's one            |
| 10:03AM | 3  | more place where I think the transferring language appears, and   |
| 10:03AM | 4  | that's on page 17 --                                              |
| 10:03AM | 5  | **THE COURT:** Okay.                                              |
| 10:03AM | 6  | **MR. SCHOEN:** -- in connection with the supplemental           |
| 10:03AM | 7  | instruction on evidence regarding the Bersa 9 millimeter. On     |
| 10:03AM | 8  | line 20, it would say, "evaluating her intent in purchasing      |
| 10:03AM | 9  | firearms and/or transferring" would be struck -- would be --     |
| 10:03AM | 10 | **THE COURT:** Okay. We'll just strike that.                     |
| 10:03AM | 11 | **MR. SCHOEN:** And I think it may appear also on page           |
| 10:03AM | 12 | 18, line 2.                                                      |
| 10:03AM | 13 | **THE COURT:** Okay. Okay.                                       |
| 10:04AM | 14 | **MR. SCHOEN:** Thank you, Your Honor.                           |
| 10:04AM | 15 | **THE COURT:** Sure. Anything else, Mr. Shahid?                  |
| 10:04AM | 16 | **MR. SHAHID:** No, sir.                                         |
| 10:04AM | 17 | **THE COURT:** Verdict form good?                               |
| 10:04AM | 18 | **MR. SHAHID:** (Nodding head affirmatively.)                   |
| 10:04AM | 19 | **THE COURT:** So with those changes, nobody has an             |
| 10:04AM | 20 | objection to the final charge; is that correct?                 |
| 10:04AM | 21 | **MR. SCHOEN:** No, Your Honor.                                 |
| 10:04AM | 22 | **MR. SHAHID:** Nope, no objection.                            |
| 10:04AM | 23 | **THE COURT:** Okay. How about tell me what do we have         |
| 10:04AM | 24 | for our listening pleasure here this morning?                   |
| 10:04AM | 25 | **MR. SHAHID:** We're going to rest.                           |

|  |  |  |
|---|---|---|
| 10:04AM | 1 | **THE COURT:** Okay. All right. So there will be no -- |
| 10:04AM | 2 | all right. Mr. Fishburne, you and your lawyer, like I talked |
| 10:04AM | 3 | to you about last night, you know you have a right to testify |
| 10:04AM | 4 | to this jury if you want to. |
| 10:04AM | 5 | **THE DEFENDANT:** Yes, sir. |
| 10:04AM | 6 | **THE COURT:** You understand you have a constitutional |
| 10:04AM | 7 | right not to testify if you don't want to? |
| 10:04AM | 8 | **THE DEFENDANT:** Yes, sir. |
| 10:04AM | 9 | **THE COURT:** You also understand that if you chose not |
| 10:04AM | 10 | to testify, the jury could not think that you were guilty based |
| 10:04AM | 11 | on the fact that you had exercised your constitutional right |
| 10:04AM | 12 | not to testify? |
| 10:04AM | 13 | **THE DEFENDANT:** Yes, sir. |
| 10:04AM | 14 | **THE COURT:** And you remember I told the jury that in |
| 10:04AM | 15 | the opening, and I'll tell them that again in closing. So |
| 10:04AM | 16 | after discussing it with your lawyer, your decision is not to |
| 10:04AM | 17 | testify; is that correct? |
| 10:04AM | 18 | **THE DEFENDANT:** Yes, sir. |
| 10:04AM | 19 | **THE COURT:** Okay. Do you have any questions about |
| 10:04AM | 20 | that with your lawyer or the Court? |
| 10:05AM | 21 | **MR. GEEL:** (Shaking head negatively.) |
| 10:05AM | 22 | **MR. SHAHID:** You have to say "yes" or "no" so she can |
| 10:05AM | 23 | write it down. |
| 10:05AM | 24 | **THE DEFENDANT:** I'm good. |
| 10:05AM | 25 | **THE COURT:** All right. Your concerned about Count 3. |

1   We don't give the indictment to the jury.

2           **MR. SHAHID:**  You're not?

3           **THE COURT:**  No, never have.  So that is the old days

4   back when you were there --

5           **MR. SHAHID:**  Ancient history.

6           **THE COURT:**  -- that's Judge Blatt did that.

7           **MR. SHAHID:**  Yes, he did.  We were in Judge Blatt's

8   courtroom, so I thought we were just going to follow his -- as

9   to Count 3, though, Judge, are we dismissing that?

10          **MR. SCHOEN:**  I believe that was already dismissed as

11  to Mr. Fishburne.  It's not been dismissed as to Ms. Ellison,

12  and Count 3, if I'm not mistaken, is the straw purchasing which

13  is what we're proving the conspiracy.  We're not proving the

14  substantive charge against Mr. Fishburne.  We're proving the

15  conspiracy.

16          **MR. SHAHID:**  I don't know -- and maybe I was wrong on

17  this.  I don't know if the jury has been told that.

18          **THE COURT:**  Told what?

19          **MR. SHAHID:**  The instructions talk about elements on

20  Counts 1, 2, and 5 obviously.  If they're not specifically

21  instructed that Count 3 does not apply to Mr. Fishburne

22  anymore --

23          **THE COURT:**  They don't know anything about whether

24  there's a Count 3 or not.  We -- how would the jury know?

25          **MR. SHAHID:**  That's right.  They're not getting the

| | | |
|---|---|---|
| 10:06AM | 1 | indictment. |
| 10:06AM | 2 | **THE COURT:** Yeah, they're not getting it, and then |
| 10:06AM | 3 | nobody mentioned it in their opening, and I didn't mention it |
| 10:06AM | 4 | in my opening, so what they're going to do is just get the |
| 10:06AM | 5 | verdict form to Counts 1, 2, and 5. |
| 10:06AM | 6 | **MR. SHAHID:** That's fine. |
| 10:06AM | 7 | **THE COURT:** And no indictment. Okay. All right. |
| 10:06AM | 8 | Anything else? |
| 10:06AM | 9 | **MR. SCHOEN:** No, Your Honor. |
| 10:06AM | 10 | **THE COURT:** Okay. We'll be at ease at the copy |
| 10:06AM | 11 | machine, and then we'll start again at 10:30. |
| 10:06AM | 12 | **MR. SCHOEN:** Thank you. |
| 10:06AM | 13 | **THE COURT:** So you're going to stand up and rest? |
| 10:06AM | 14 | **MR. SHAHID:** Yes, sir. |
| 10:06AM | 15 | **THE COURT:** Okay. And y'all will be ready to start |
| 10:06AM | 16 | arguing at 10:30? |
| 10:06AM | 17 | **MS. HENDERSON:** Yes, sir. |
| 10:06AM | 18 | **THE COURT:** Okay. Sounds good. |
| 10:06AM | 19 | **MR. SHAHID:** Thanks, Judge. |
| 10:06AM | 20 | **THE COURT:** Okay. We're going to change -- on the |
| 10:06AM | 21 | verdict form on Count 2, we're going to delete 922(a)(6)? |
| 10:06AM | 22 | **MR. SCHOEN:** The 922(d). |
| 10:06AM | 23 | **THE LAW CLERK:** Yes. |
| 10:06AM | 24 | **MR. SCHOEN:** Not the (a)(6). |
| 10:06AM | 25 | **THE LAW CLERK:** Yes. |

|       |                                                                    |
|-------|--------------------------------------------------------------------|
| 1     | (Recess from 10:06 a.m. to 11:05 a.m.)                             |
| 2     | (Call to order of the Court.)                                     |
| 3     | **THE COURT:** Take your seats. Thanks. Our missing              |
| 4     | juror showed up. Couldn't find a parking place. It's the City    |
| 5     | of Charleston. I wish the City Council would do something        |
| 6     | about that.                                                       |
| 7     | **MR. SHAHID:** Your Honor, if they would just use the          |
| 8     | city garage, we would not have this problem whatsoever.          |
| 9     | **THE COURT:** That's your platform next time you run,           |
| 10    | Mr. Shahid.                                                       |
| 11    | **MR. SHAHID:** Parking for jurors all the way around.          |
| 12    | **THE COURT:** Absolutely. Parking for everybody.                |
| 13    | **MR. SHAHID:** You've got parking, Judge.                      |
| 14    | **THE COURT:** Okay. Anything before we bring the jury           |
| 15    | in?                                                               |
| 16    | **MR. SHAHID:** You want me to rest in front of the             |
| 17    | jury, I presume?                                                  |
| 18    | **THE COURT:** Rest, and then I'll recognize -- I'll             |
| 19    | tell the jury what's going to happen now, and we'll go from       |
| 20    | there. Whose going first?                                         |
| 21    | **MR. SCHOEN:** She'll be closing. I'll do rebuttal.            |
| 22    | **THE COURT:** Okay. Good. Ready? All right.                     |
| 23    | (Jury in at 11:07 a.m.)                                           |
| 24    | **THE COURT:** Okay. Ladies and gentlemen, welcome              |
| 25    | back. I apologize for the lack of parking. It's downtown         |

| | |
|---|---|
| 11:07AM | 1 |
| 11:07AM | 2 |
| 11:07AM | 3 |
| 11:07AM | 4 |
| 11:07AM | 5 |
| 11:08AM | 6 |
| 11:08AM | 7 |

Charleston.  It's -- I know it's a problem.  Wish we could do something about it.  We can't make any more land unfortunately.  We can't go up either, because you can't go up very high.  So -- but we're going to continue with the case at this time, so Mr. Shahid?

**MR. SHAHID:**  Your Honor, the defense rests.

**THE COURT:**  Okay.  All right.  Ladies and gentlemen of the jury, you've now heard all the evidence in the case, and right now the lawyers will start their final -- give you their final arguments to say what they thought they proved, and so after that, we'll probably take a break.  I'll let you go in and order your lunch, and then we will come back, and give you the final charge and the law, and you'll be able to take the exhibits and everything back in with you, okay?

The Government has the burden of proving its case beyond a reasonable doubt, so the Government will give its opening argument, then Mr. Shahid will give his closing argument, and then the Government will give their short rebuttal.  So please pay attention to the lawyers and recognize them for their closing argument.

Ms. Henderson?

**MS. HENDERSON:**  Thank you, Your Honor.  May it please the Court.

Good morning.  Ms. Murray, can I have a connection, please?

|     |     |     |
| --- | --- | --- |
| 11:08AM | 1 | **COURTROOM DEPUTY:** Yes. |
| 11:09AM | 2 | **MS. HENDERSON:** Thank you. Yesterday my co-counsel, |
| 11:09AM | 3 | Chris Schoen, told you something to help you remember what this |
| 11:09AM | 4 | case is really all about. He told you three crime scenes, two |
| 11:09AM | 5 | guns, one purchaser, and zero reasonable doubt. |
| 11:09AM | 6 | Yesterday you heard a lot about the burden of |
| 11:09AM | 7 | proof in criminal cases and that the Government bears the |
| 11:09AM | 8 | burden to prove the Defendant's guilt beyond a reasonable |
| 11:09AM | 9 | doubt. This is not a burden that we shy away from. In fact, |
| 11:09AM | 10 | it's a burden that we embrace. Over the next few minutes, I |
| 11:09AM | 11 | want to walk you through the crimes that the Defendant, Quentin |
| 11:09AM | 12 | Fishburne, is being charged with, the elements that the |
| 11:09AM | 13 | Government has to prove to you in order to convict |
| 11:09AM | 14 | Mr. Fishburne of those crimes, and then the evidence that you |
| 11:09AM | 15 | heard yesterday that proves each of those elements. |
| 11:09AM | 16 | I think you'll find when you're done that the |
| 11:09AM | 17 | Government has not only embraced that burden, but we've met it. |
| 11:10AM | 18 | Now, let's talk about what Mr. Fishburne is |
| 11:10AM | 19 | charged with. He is charged with three separate crimes. One, |
| 11:10AM | 20 | being a felon in possession of a firearm on May 2nd, 2014; two, |
| 11:10AM | 21 | being a felon in possession of firearm ammunition on March |
| 11:10AM | 22 | 31st, 2018; and three, conspiring with Renata Ellison to |
| 11:10AM | 23 | knowingly make false statements in connection with the purchase |
| 11:10AM | 24 | of a firearm. |
| 11:10AM | 25 | I want to start with Counts 1 and 5. These are |

11:10AM 1  the counts for the felon in possession of a firearm.  What does

11:10AM 2  the Government have to prove in order for you to convict

11:10AM 3  Mr. Fishburne of Counts 1 and 5?  First, that Quentin Fishburne

11:10AM 4  is a felon.  The defense and the Government have stipulated to

11:10AM 5  this fact.  This element is not an issue in this trial and has

11:11AM 6  been proven to you beyond a reasonable doubt.

11:11AM 7  Second, that Quentin Fishburne knows he is a

11:11AM 8  felon.  The defense and Government have stipulated to this

11:11AM 9  fact.  This fact is not an issue in this trial and has been

11:11AM 10  proved -- this element, I'm sorry -- is not an issue in this

11:11AM 11  trial and has been proven to you beyond a reasonable doubt.

11:11AM 12  Third, that the guns and ammunition traveled at

11:11AM 13  some point in and affecting interstate commerce.  Again, the

11:11AM 14  defense and Government have stipulated to this fact.  This

11:11AM 15  element is not an issue in this trial and has been proven to

11:11AM 16  you beyond a reasonable doubt.

11:11AM 17  The fourth element is the only element in issue

11:11AM 18  at this trial, and that is whether or not Quentin Fishburne

11:11AM 19  knowingly possessed those firearms and ammunition.

11:11AM 20  Now, I want to talk to you, before we get into

11:11AM 21  the actual crimes and the evidence, what actually possession is

11:11AM 22  and what it's not.  I want to clear something up.  Ownership

11:11AM 23  does not equal possession.  You do not have to own something in

11:12AM 24  order to possess it.

11:12AM 25  Quentin Fishburne did not own either of the cars

11:12AM 1    he was driving on May 2nd, 2014, or March 31st, 2018.  In fact,

11:12AM 2    Agent Callahan told you that Mr. Fishburne doesn't own any

11:12AM 3    cars, but he was still clearly in possession of those cars.  He

11:12AM 4    was driving them.  He had control of them.  He was in

11:12AM 5    possession of them.

11:12AM 6            Your name does not have to appear on the

11:12AM 7    purchase paperwork for a firearm in order for you to possess

11:12AM 8    that firearm.  In fact, if that was the standard, ladies and

11:12AM 9    gentlemen, no felon would ever be convicted of being a felon in

11:12AM 10   possession of a firearm, because felons cannot lawfully

11:12AM 11   purchase firearms.  Their names will never appear on the

11:12AM 12   purchase paperwork.  So, again, ownership does not equal

11:12AM 13   possession.

11:12AM 14           So then what is possession under the law?  Judge

11:13AM 15   Norton is going to charge you that a person possesses an object

11:13AM 16   if he knowingly has the ability and intention to exercise

11:13AM 17   control over the object, either directly or through others.  A

11:13AM 18   person may possess an object even if he is not in physical

11:13AM 19   contact with it and even if he does not own it.  More than one

11:13AM 20   person may possess an object.  If two or more persons share

11:13AM 21   possession, that is called joint.  If one person possesses the

11:13AM 22   object, that is called sole possession.  The term possess

11:13AM 23   includes both joint and sole possession.

11:13AM 24           So with that definition in mind, let's look at

11:13AM 25   Count 5, which is the May 2nd, 2014, traffic stop involving the

Jimenez 9 millimeter and the evidence that was presented to you yesterday that tends to prove that Quentin Fishburne knowingly possessed that Jimenez 9 millimeter.

First, when Officer Langenfeld tried to initiate a traffic stop on the vehicle that Mr. Fishburne was driving, Mr. Fishburne, instead of stopping like most people do, took off. He fled. Why? Why are you going to flee if you're not doing something wrong? Why are you going to flee if you don't have something you're not supposed to have? When the officer continued to pursue him despite his fleeing, he and his passenger both waved firearms in the air in an attempt to back the officer off. Officer Langenfeld told you that he saw them wave something in their hands and that in his training and experience as a law enforcement officer, there was no doubt in his mind that it was firearms. In fact, he radioed that out to the other officer they had something in their hands to warn them, and he backed off because he wasn't sure what was about to happen.

He still continues to pursue them. What does Mr. Quentin do, Mr. Fishburne do? He drives to familiar territory, jumps out of the vehicle, and flees yet again. Then what happens? Lo and behold, Officer Langenfeld was correct. They find two firearms in that vehicle.

One was stolen. The other was purchased by Quentin Fishburne's girlfriend, Renata Ellison. Renata Ellison

is not present during that traffic stop.  It is not Renata

Ellison's car.  In fact, it's Mr. Fishburne's wife's car.

She's also not present.

The defense would have you believe that

Mr. Fishburne -- a gun purchased by Mr. Fishburne's girlfriend

manages to get into his wife's car without him having any

knowledge of it.  Ladies and gentlemen, when you look at all

the evidence that was presented yesterday as to Count 5, it is

clear that Mr. Fishburne knowingly possessed that Jimenez 9

millimeter on May 2nd, 2014.

Let's move to Count 1, which is the March 31st,

2018, traffic stop involving the Smith & Wesson .40 caliber.

What evidence did you receive yesterday that proves that

Mr. Fishburne knowingly possessed that Smith & Wesson .40

caliber?  First, remember when Mr. Fishburne entered the

traffic checkpoint, he would barely roll the window down to

engage with the officer.  When the officers told him that they

were going to search the car, the first thing out of his mouth,

"Anything you find in here is not mine."  What did

Officer Duboise tell you?  As an officer, the second you hear

that, you know you're about to find something.  A statement

like that screams guilt.

Quentin Fishburne is the only occupant of that

vehicle.  The gun is located under the driver's seat where

Mr. Fishburne had been seated.

We're going to come back to this letter in a little bit, but I want to touch on it here. Remember Renata Ellison when she wrote the letter and then recanted the letter, she said to Agent Callahan, "I don't want to get in trouble for something Quentin did." Something Quentin did, not her.

The fact that that same gun was used in a shooting in 2015 where Quentin Fishburne was present and convicted of a crime in connection with. There is no evidence that Renata Ellison was present at either of those events.

Ladies and gentlemen, again, when you look at all the evidence that was presented as to Count 1 regarding the Smith & Wesson .40 caliber, it is clear that Mr. Fishburne knowingly possessed that gun beyond a reasonable doubt on March 31st, 2018.

So let's move to Count 2. This is the conspiracy to conspire with Renata Ellison to knowingly make false statements in connection with the purchase of a firearm.

Now, Judge Norton is going to charge you that in order to find the Defendant guilty on this count, the Government has to prove that two or more persons entered an unlawful agreement starting at a time unknown and continuing through August 15th, 2018, to commit the crime of making false statements to licensed firearms dealers in connection with the acquisition of firearms; that Quentin Fishburne knew of the conspiracy; and that Quentin Fishburne knowingly and

voluntarily became a part of this conspiracy.

Let's break that down.  Basically that there was an agreement between Renata Ellison and Quentin Fishburne to purchase a firearm and lie about it on the ATF form, that Quentin knew about the agreement, and that he voluntarily entered the agreement.

So let's say Renata Ellison knows Quentin Fishburne is a felon.  Quentin Fishburne knows he's a felon.  Both of those facts have been established.  Renata Ellison goes and buys a gun.  She indicates that she's going to be the owner of that gun.  After she purchases it, she gives it to Quentin Fishburne, and he accepts it.  Quentin Fishburne and Renata Ellison have conspired to knowingly make a false statement in the purchase of a firearm.

So what evidence did we present to you yesterday that tends to prove this conspiracy?

First, the fact that Renata Ellison has a pattern of buying firearms and then those firearms ending up being possessed and used by men she's in a romantic relationship with.

The fact that Renata Ellison and Quentin Fishburne have been in a romantic relationship since 2013.

The fact that Renata Ellison told Agent Callahan she knew that Quentin Fishburne was a felon.

The fact that Renata Ellison purchased the

1  Jimenez 9 millimeter on March 8th, 2014 -- 2013 and signed the

2  form that it was for her.

3          The fact that Quentin Fishburne was found in

4  possession of the Jimenez 9 millimeter on May 2nd, 2014.

5          The fact that four months after Quentin

6  Fishburne was caught with the Jimenez, Renata Ellison buys the

7  Smith & Wesson .40 caliber firearm and signs the form that it

8  was for her.

9          The fact that a little over three months later,

10  Renata Ellison goes back to the Sheriff's Office to claim the

11  Jimenez 9 millimeter.

12          The fact that the Smith & Wesson .40 caliber was

13  used in the November 2013 shooting that Quentin Fishburne was

14  convicted of a crime in connection with.

15          The fact that Quentin Fishburne was found in

16  possession of that Smith & Wesson .40 caliber on March 18th --

17  on March 31st, 2018.

18          The fact that after Quentin Fishburne was

19  arrested for the possession of that Smith & Wesson, Renata

20  Ellison followed her pattern of going back to claim the firearm

21  and wrote a letter that was presented to a magistrate judge

22  during Quentin Fishburne's bond hearing.

23          The fact that we know that the contents of that

24  letter were not true, because when confronted with the pattern

25  of her guns that she purchased being found in possession of

11:21AM 1  other people, she told Agent Callahan -- she asked if she could

11:21AM 2  recant her statement, that she wanted to tell the truth, and

11:21AM 3  that she didn't want to get in trouble for something Quentin

11:21AM 4  did.  She was not bullied.  She was not coerced.  She was not

11:21AM 5  threatened by Agent Callahan.  She was presented with the

11:21AM 6  facts, and she realized that she was caught in her lie.

11:21AM 7  Ladies and gentlemen, when you take all these

11:21AM 8  things together and you look at it, it clearly shows that

11:21AM 9  Renata Ellison with Quentin Fishburne's permission, consent,

11:21AM 10  and agreement was buying firearms to him -- buying firearms for

11:21AM 11  him despite putting in the purchase paperwork that they were

11:21AM 12  for her.

11:21AM 13  I want to ask you what all these things I'm

11:22AM 14  about to say have in common?  Quentin Fishburne's girlfriend.

11:22AM 15  Quentin Fishburne's wife's car.  The Jimenez 9 millimeter

11:22AM 16  purchased by Quentin Fishburne's girlfriend.  Quentin

11:22AM 17  Fishburne's mother's car.  The Smith & Wesson purchased by

11:22AM 18  Quentin Fishburne's girlfriend.  Shell casings matching that

11:22AM 19  Smith & Wesson at a 2015 shooting that Quentin Fishburne was

11:22AM 20  convicted of a crime in connection with.  What is the common

11:22AM 21  denominator?  Quentin Fishburne.

11:22AM 22  We do not get here without Quentin John

11:22AM 23  Fishburne.

11:22AM 24  Three crimes scenes, two guns, one purchaser,

11:22AM 25  and I submit a new one.  One common denominator, Quentin

| | | |
|---|---|---|
| 11:22AM | 1 | Fishburne.  We're asking you to return a verdict of guilty as |
| 11:23AM | 2 | to all three counts.  Thank you. |
| 11:23AM | 3 |        THE COURT:  Thank you, Ms. Henderson.  Mr. Shahid? |
| 11:23AM | 4 |        MR. SHAHID:  Good morning. |
| 11:23AM | 5 |        THE JURY:  Good morning. |
| 11:23AM | 6 |        MR. SHAHID:  I want to thank you again for your |
| 11:23AM | 7 | service as jurors in this case.  This is a very important case |
| 11:23AM | 8 | for the Government.  It's also important because the most |
| 11:23AM | 9 | important person in this courtroom today is Mr. Fishburne, |
| 11:23AM | 10 | nobody else. |
| 11:23AM | 11 |        After I give you my closing summation or my |
| 11:23AM | 12 | closing argument, I'm going to sit down.  I will not have an |
| 11:23AM | 13 | opportunity to come back out to talk to you.  There may be |
| 11:23AM | 14 | something that I wish I could come back out and jump up and say |
| 11:23AM | 15 | to you or something that I could offer back in reply.  The |
| 11:23AM | 16 | Government gets the last word in all of this, so I'm not going |
| 11:24AM | 17 | to be able to cover every point of law or every point of fact |
| 11:24AM | 18 | that I want to talk to you about, but this is a summation of |
| 11:24AM | 19 | what we heard from yesterday's evidence and witnesses who |
| 11:24AM | 20 | testified yesterday. |
| 11:24AM | 21 |        The Court is going to give you instructions |
| 11:24AM | 22 | about two very important elements of the law that apply to |
| 11:24AM | 23 | Quentin Fishburne, reasonable doubt and presumption of |
| 11:24AM | 24 | innocence.  The Judge will go into those details much better |
| 11:24AM | 25 | than I can explain that to you, but your verdict must be |

11:24AM 1  unanimous.  That means each and every one of you sitting in

11:24AM 2  this box have got to be in agreement.

11:24AM 3            And the verdict is very simple.  Is he guilty or

11:24AM 4  not guilty of Count 1, Count 5, and Count 2?

11:24AM 5            And it has to be all of y'all in agreement with

11:24AM 6  that, but that verdict must strip from Mr. Fishburne the

11:24AM 7  presumption of innocence, and that burden must be beyond a

11:25AM 8  reasonable doubt.  That's not something small or something

11:25AM 9  callous.  It is a tough burden.

11:25AM 10  Now, this case comes down to very simply one or

11:25AM 11  two new elements.  Possession.  Knowingly possessed.

11:25AM 12  I asked you yesterday to pay close attention to

11:25AM 13  the Indictment.  Now, you won't have the Indictment back in the

11:25AM 14  courtroom -- back in your jury deliberation room, and the Judge

11:25AM 15  will read it in his instructions to you, but the Indictment

11:25AM 16  states specific dates on which Mr. Fishburne is alleged to have

11:25AM 17  possessed these two different firearms we've been talking about

11:25AM 18  for the past 24 hours or so.

11:25AM 19  Possession can be shown by different factors.  I

11:25AM 20  possess in my hand right now my glasses.  You can see that.  I

11:26AM 21  possess it.  I possess right now my car.  I have the keys to my

11:26AM 22  car.  I possess it.  The Government's correct.  Title to

11:26AM 23  something does not equate to possession, but title is

11:26AM 24  possession, but you can prove possession by other means, and

11:26AM 25  you have to prove possession on that particular date that's

11:26AM 1  stated in the Indictment, and you have to prove possession

11:26AM 2  beyond a reasonable doubt.  Not by suspicion, not by going

11:26AM 3  around your elbow to prove something, but by sufficient,

11:26AM 4  credible evidence, and it must be complete.

11:26AM 5  Now, we made the case very simple for the

11:26AM 6  Government.  We've agreed and stipulated to three of the four

11:26AM 7  elements.  That's 75 percent of their case.  We gave them 75

11:26AM 8  percent of the case.  We're being direct with you, upfront with

11:27AM 9  you and forthright with you about the three of the four

11:27AM 10  elements.  But you can't have this -- like horseshoes, you get

11:27AM 11  be close to the pin.  You can't be close, and that's it.

11:27AM 12  You've got to get that horseshoe all the way around the ring to

11:27AM 13  find him guilty beyond a reasonable doubt.

11:27AM 14  We talked about yesterday some number the

11:27AM 15  Government threw at you.  Let me give you some more numbers to

11:27AM 16  be thinking about to help you understand reasonable doubt.

11:27AM 17  Six, four, zero.  Six years, four law enforcement agencies,

11:27AM 18  zero fingerprints.

11:27AM 19  From May of 2014 until today -- until yesterday

11:27AM 20  when you heard the evidence, the Government had almost six

11:27AM 21  years of an opportunity to prove possession.  Six full years

11:28AM 22  from that time of the stop in May of 2014 until yesterday, they

11:28AM 23  had six years to try to establish possession of these two guns.

11:28AM 24  There were four law enforcement agencies working

11:28AM 25  together in concert to prove that:  The Colleton County

11:28AM 1    Sheriff's Office, the Walterboro Police Department, SLED, and

11:28AM 2    ATF. Local, state and national governments had the opportunity

11:28AM 3    over six years, and how many fingerprints did they come up

11:28AM 4    with? Zero. Fingerprints prove possession on that particular

11:28AM 5    day. Let's not run over that date and think, "Oh, that's not a

11:28AM 6    big deal." It's one of the biggest deals. On the day that he

11:28AM 7    is stopped in the car, did he possess the firearm? Did he

11:28AM 8    possess it? It's very simple. This is not complicated. It's

11:29AM 9    very simple. Six, four, zero.

11:29AM 10           Seven, 15, zero. Seven witnesses called on the

11:29AM 11   witness stand by the Government yesterday. 15 exhibits you've

11:29AM 12   got in front of you. Zero fingerprints. You had three

11:29AM 13   officers from the Colleton County Sheriff's Office, Langenfeld,

11:29AM 14   Riney and Davis. You had two from the Walterboro Police

11:29AM 15   Department, Cook and Duboise. You had Agent Callahan and

11:29AM 16   Mr. Smith. Seven witnesses. Zero evidence of fingerprints.

11:29AM 17   15 exhibits. 15 exhibits. Zero proof of fingerprints.

11:29AM 18           How do you prove possession on that particular

11:29AM 19   day, ladies and gentlemen? How do you prove that somebody

11:30AM 20   possessed something on the day that's in question? Not three

11:30AM 21   years ago, not four years ago, not 10 months ago, but on the

11:30AM 22   day that the car was stopped. Zero. Six, four, zero. Seven,

11:30AM 23   15, zero. Zero equals reasonable doubt. Reasonable doubt

11:30AM 24   equals not guilty.

11:30AM 25           It's just that simple. It really is just that

| | |
|---|---|
| 11:30AM | 1 |
| 11:30AM | 2 |
| 11:30AM | 3 |
| 11:30AM | 4 |

simple.  This is not complicated.

Nine, zero.  Nine pieces of evidence up here in which they could have taken the time to dust for fingerprints. The gun.  Zero fingerprints tested.  This clip or magazine, zero dusting for fingerprints.  The ammunition that came out, zero.  Zero.  The Jimenez 9 millimeter, where is it?  It has the same gun, the same clip, the same bullets in that.  Zero.

These three shell casings, they did a bunch of tests on this.  That came about 2015.  Zero fingerprints. Didn't even try fingerprints, not even made an attempt, and you remember when I approached Mr. Smith, the SLED fellow who testified, I asked him to demonstrate when they were talking about this gun about how the mechanics of it worked, and he was showing us.  You remember?  He was holding the gun.  He grabbed the magazine.  What am I doing?  My hands on it.  My fingers are on it, on these items.  Multiply that by two.  Two guns and two clips.  Multiply that by the number of ammunition because you have to take the ammunition and stick it in here.

I'm not being cute or funny or trying to deceive you.  I'm just giving you facts, simple facts, because the whole case comes down to knowingly possessed on the date of the Indictment, not at some particular point other than that.  He's not charged with how did he get at some other point in time. It's what's on the Indictment.

May of 2014, March of 2018.  And how do you

prove that?  And fingerprints are really simple evidence.  At least make the opportunity to try, because you know what happens when you test something?  You provide information to help you make a decision.

Think about the fairness of this.  Think about the fairness of this.  What if they did dust for fingerprints on any of these nine items?  Over the six-year course of this investigation, over the four agencies involved, over the seven witnesses they had, what if they had dusted for fingerprints and it came back positive?  It would probably be a whole lot easier; wouldn't it?  We may not even be standing here.

But much more importantly, ladies and gentlemen, and utmost fairness to somebody, to a citizen of our community to a citizen of this state or a citizen of this nation, the utmost fairness is what if they dusted for fingerprints, and it came back negative?  They neglected to give Mr. Fishburne a fair opportunity.  That's reasonable doubt.  That's reasonable doubt.  They deprived him of the opportunity to prove his innocence.  That's reasonable doubt.

Six years, four agencies, seven witnesses, 15 pieces of evidence, they failed him.  I mentioned to you yesterday about windows in this courtroom to let light in. You're the light.  You're the light.

Let's go to a little bit about the facts of the case, talking about the police officers who testified.  First

11:35AM
11:35AM
11:35AM
11:35AM
11:35AM
11:35AM
11:35AM
11:35AM
11:35AM
11:35AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:36AM
11:37AM

1  officer was a deputy who now works up in Wake County, North

2  Carolina.  He came up, and he testified about this high speed

3  chase.  Now, you'll have the video if you want to look at the

4  video.  It's raining.  You see rain on the windshield.

5          He's got a camera fixed on his car, so whatever

6  way the car is traveling that camera was pointed.  Now, you

7  heard his -- he's on the radio.  He's talking to dispatch.

8  He's driving the car at a high rate of speed and talking to

9  other officers and dispatch on what's going on.  Now, you look

10  at that tape.  You look at that video.  Tell me -- tell

11  yourselves anywhere, anywhere in that video did you see

12  movement in the car that he was chasing?  Anywhere?  Can you

13  see something happening inside that car?  The reason we have

14  video recordings, folks, is to verify.  You can't verify

15  something that you can't see.  There's no video at all, no

16  depiction whatsoever in that video that shows movement in the

17  car.

18          Let's talk about finding the guns.

19          The testimony was from Officer Davis, I think

20  who it was -- or Riney, I apologize.  Riney.  He's the one who

21  actually recovered the guns.  We can't see that happening

22  because another truck comes in and is blocking the officer's

23  in-car dash camera from where the other car was stopped.  So we

24  can't see what is going on with that because the truck comes in

25  and blocks the view.

But there's Officer Riney who testified about recovering the guns.  He said this.  This is very important.  This goes to possession.  Where were the guns located?  Two guns, passenger's side, not the driver's side, and who's the driver?  Mr. Fishburne.  Possession on the passenger's side.  And this is something very interesting that he said as well.  Partially underneath the seat I think is what he said, words to that effect.  Not fully out on the floorboard, but partially hidden.

Now, is that -- if what happened took place the way he described it, wouldn't one gun be on the driver's side and one gun be on the passenger's side, right on the floorboard clearly visible?  Possession.  Reasonable doubt.

What happened to that gun?  It was in their possession for four months.  The rightful owner came and got it.  She signed for it, produced her driver's license on this thing, and said, "I want my gun back."  "I want my gun back."  They gave it to her.  Possession.

Let's go to March 2018.  You had two people testify about that.  By the way, before I leave that point, Officer Davis was the one who testified about giving that gun back.  You know what his job was?  Supervising.  Supervising sergeant.  He's a supervisor.  Did it ever occur to him at any point in time to say to those guys, "Complete your investigation.  We've got the gun.  We had it from May through

11:39AM 1    December.  You know, perhaps we need to look at the gun and

11:39AM 2    check about who it really belongs to, whether or not

11:39AM 3    Mr. Fishburne really possessed a gun on the date in question."

11:39AM 4    They did no follow-up investigation.  Got rid of the gun

11:39AM 5    within -- from May to December, the gun was returned back.

11:39AM 6                Officer Cook and Officer Duboise testified about

11:39AM 7    the March 2018 checkpoint.  This is pretty curious.  You don't

11:39AM 8    know a whole lot about where this checkpoint took place.  You

11:39AM 9    know it was in Walterboro.  They described Hiers Corner and

11:39AM 10   Center Street, but you don't know a whole lot about it.  They

11:40AM 11   said, "We're going to do a checkpoint because we're looking for

11:40AM 12   a fleeing felon?"  No.  "We're looking for illegal aliens south

11:40AM 13   of the border?"  No.  "We're just going to do a broad

11:40AM 14   checkpoint because we're just checking people's driver's

11:40AM 15   license, and registration, and insurance cards?"  No.  "We're

11:40AM 16   checking at a checkpoint for speeders."

11:40AM 17               How do you catch speeders?  How do police

11:40AM 18   officers catch speeders?  Pretty simple.  They have a little

11:40AM 19   device in that car called a radar.  They sit on the side of the

11:40AM 20   road, and they watch the cars go by, and if they're speeding

11:40AM 21   beyond the speed limit by that school, they turn their blue

11:40AM 22   lights on, and they stop them.  It's a great deterrent, by the

11:40AM 23   way, because as other cars are going by, they see the blue

11:40AM 24   light going on, and they quit speeding.  It takes one officer,

11:41AM 25   not three or four.

Folks, use your common sense on this. What's really going on with all of this? What's really going on with that checkpoint honestly? I mean, come on. No one told you to check your common sense at the front door when you walked into this courtroom. Common sense tells you they really weren't up there to catch speeders. They'd have radar up there and a couple of police officers. They do it all the time. You know that they do it all the time.

Now, it's really interesting about Sergeant Cook. I'm going to play for you his video recordings in a second. He's a supervising officer on the scene. Guess what he has on? A body camera so we can record and see for our own eyes what's taking place out there. What else does he have going on? He has an in-car dash cam to see what was going on. Guess what Officer Duboise has? He's got a body-worn camera just like Sergeant Cook does. Is it working? No. Does he bother to check to see if the red light is on? No.

Now, just think about this for a second. You want to be fair? Let's be fair. Be fair to Mr. Fishburne. The camera records audio and visual activity, so what is said between the officer and the cars that he stopped can be picked up. If he can turn it on and off -- he has to hit a red button to turn it on and off to save the battery, but every time he has an encounter with the public, which is part of their policy, he's supposed to turn that sucker on, and all he has to

do is look at the red light and see if that sucker is on.  Very
simple.  One, two, three.  He can record exactly what takes
place.  I mean, credibility is critical in this case.  This is
critical in this case.

I want you to observe Officer Duboise's
testimony, how he was sitting in that stand, smacking gum.
Well, that shows a lot of respect for you guys; doesn't it?

I'm going to step back.  I asked about the
policy, particularly the checkpoint.  "They don't apply to me."
Excuse me.  I'm sorry, Officer.  I thought you were an officer
with the Walterboro Police Department and had a policy about
how to do checkpoints.  "That doesn't -- they don't apply to
me."  I'm smacking gum.  Callous attitude.  Callous attitude
towards you, callous attitude towards Walterboro Police
Department.  Body-worn cameras are to protect him and to
protect the people he comes in contact with.  That's just basic
fairness.

Let's go through the encounter he has with
Mr. Fishburne.  He says that he had encountered about 50 or so
people before that day.  He's not wearing gloves, and he says
Mr. Fishburne was reluctant to roll down the window, and he
could smell marijuana, all right?  Now, if he had his body
camera on, we would know what really happened, but what the
hay?  We don't.  Then he says he smells marijuana.  Tells him
to pull to the side of the road.  Now, this is very

interesting, what happens after that.

He pulls off to the side of the road, and he gets Mr. Fishburne out of the car and pats him down. I asked him specifically, "You patted him down, but you didn't arrest him then?" He goes to the back of the car, and I said, "When you went looking in the car, did you find anything that would, you know, substantiate the smell of marijuana inside the car?" There might be some burnt blunt. You know, a little reefer, the little weed they smoke. Maybe that would be, like, in the ashtray. Maybe it fell on the floor where he was sitting. No. I don't need to worry about that kind of stuff.

So he can't find anything in the car that would substantiate the smell of marijuana. Isn't that interesting? He cannot find anything in the car to substantiate the smell of marijuana, and the only reason, folks, the only reason he pulls that car over is he smells marijuana. Oh, but he smelt it on him when he had him in jail, right, because you saw on the video -- I'll play it for you in two seconds. You saw him pat him down, and here we are person-to-person, physical-to-physical, I'm patting him down, and clearly he smelled it then, right? No, because the back of the car. He didn't smell it on his person, and there's zero, zero evidence that there's something inside the car to lend him the credibility that he smelled marijuana. Reasonable doubt. Reasonable doubt.

Also pay attention to this. They encountered about 50 people, I think is what the testimony was. They stopped, I think, maybe three or four people. One person was for something dealing with some marijuana charges, and I think Officer Cook testified they had that person pull off to the side of the road. They went through the process of checking out the car and checking out that driver. That driver was given a citation and left.

They didn't stop the checkpoint then; did they? Oh, but guess when they stopped the checkpoint? When they arrested Mr. Fishburne. Something is definitely funny about this, folks. Something is really funny about this. That's called reasonable doubt, by the way. The reason for the checkpoint is speeding, and they just so happened to stop the checkpoint after the arrest of Mr. Fishburne, but a person who's in similar circumstances when they pull off the side of the road and do a search of that car, they don't stop the checkpoint then.

Do you see the inconsistencies with their stories here? Do you see the reasonable doubt that we're taking about here? The Defendant has given the Government 75 percent of their case. All they have to do is finish the 25 percent, and they can't do it, because they didn't do their job after six years of investigation, four agencies, 15 pieces of evidence, seven witnesses. It's simple to prove possession,

11:48AM 1    folks.  Come on.  It's not that complicated.

11:48AM 2                 Did they bring in a witness at any point to say,

11:48AM 3    "I saw Mr. Fishburne with that gun an hour beforehand," or a

11:48AM 4    day beforehand or a week beforehand or a month beforehand or a

11:48AM 5    year beforehand?  No.  They tried to bring in this case of

11:48AM 6    2015.  Just read the stipulation on that.  You'll have it back

11:48AM 7    with you in the room.  If I can find it.  Here it is.  This is

11:48AM 8    stipulation.  Pay very close attention to this stipulation

11:49AM 9    dealing with 2015.  This is the only connection that they try

11:49AM 10   to come up with about possession.

11:49AM 11                There was a shooting, a shooting, in Colleton

11:49AM 12   County on November the 6th, 2015.  When was this gun found?

11:49AM 13   March of 2018, not quite three years, two years and several

11:49AM 14   months, okay?  That's how far back they had to go.  Involving

11:49AM 15   members or associates of a criminal street gang known as the

11:49AM 16   Cowboys in which at least three different firearms were used:

11:50AM 17   A .380, a .40, and .45 caliber shell casings were recovered

11:50AM 18   from the scene.  The three .40 caliber shell casings recovered

11:50AM 19   are Exhibits 11, 12, and 13 in this case.

11:50AM 20                Quentin Fishburne was convicted of a crime in

11:50AM 21   connection, in connection with this shooting, not the shooting.

11:50AM 22   I'm just reading what we agreed on.  Quentin Fishburne was

11:50AM 23   convicted of a crime in connection with the shooting, but not

11:50AM 24   the shooting.  He admitted.  He's being very forthright with

11:50AM 25   you, folks.  He's come to tell you what he's guilty of doing.

He admitted that he was an associate of the Cowboys, that he was present at the scene, and that he drove another associate of the Cowboys away from the scene after the shooting, and guess what?  Authorities were not able to determine whether or not Mr. Fishburne had fired any of these shots on November 6th of 2015.

So these three shell casings -- which they don't have the fingerprints on because they didn't even bother to test anything -- found two and a half plus years later at a shooting in which they don't even know who the shooter was. Somehow, somehow that proves that Mr. Fishburne possessed this gun in March of 2018.

Now, if you said, "I was the shooter, I shot this gun back in November of 2015," okay.  Maybe he's got possession back then, but we don't even have facts or evidence or proof of any sort that he possessed a gun back in 2015, just that these shell casings were found at a shooting in which he's not the shooter.  There's no evidence about him being the shooter.

Reasonable doubt.  Reasonable doubt.

Let's talk about conspiracy.  Conspiracy has this stigma about it.  It takes two or three -- two people plus to be involved in a conspiracy, and they got to have some sort of meeting of the minds in this conspiracy.  They've got to agree on doing something together that's illegal.  That's what conspiracy means.  The Judge is going to instruct you.  It's

like a partnership of sorts, like a business partnership, I
guess, and the two people who have got to be involved in it
have got to agree on doing something to carry out an illegal
act.

The illegal act that they're alleging at this
time is making false statements to a federal licensed firearm
dealer.  Okay?  So in order to do that, you've got to do
something to further the conspiracy.  So if one person does
something, at least one other person has got to do something to
further it, to advance it to make the conspiracy successful, to
carry out the conspiracy.

Have you heard one bit of evidence whatsoever
that Quentin Fishburne did something to help lie on the form?
Was he present when Ms. Ellison went there to fill out the
form?  You have no evidence on that whatsoever.  Was he in a
car outside with the engine running, waiting for her to go in
and buy the gun and come back out?  Did he give her a dollar
bill to go do that, or a $100 bill, or $5,000 to go buy the gun
for him?  We don't know.  There was zero evidence, because I
asked, "What follow-up investigation did you do to talk to the
dealers about this so we can find out about Mr. Fishburne's
involvement?"

Now, this is also something very curious about
these forms, and you go back and examine them.  It has her name
on here, her name.  We've blacked out her street address for

her privacy, but it has her street address on there and the city that she lives in. It has her height and weight, so you can have a physical description of her. It has her date of birth, and a part of that is blacked out, 1979. She has to show identification, a driver's license. She put down the driver's license on here, and if you check the driver's license number and this driver's license number, it's the same. And her date of birth, it's kind of hard to read, but it's the same year.

So, boy, these were pretty good crooks; aren't they? They're hiding their identity; aren't they? They're trying to lie and deceive somebody; aren't they? I'm giving you my name, my date of birth, my physical description, my driver's license, my driver's license's number, to show you that I'm an actual driver.

Now, I asked the agent about street purchases. So you have this form filled out to ensure that the person who's buying the gun is legitimate and then they're actually the person buying the gun, so that if Agent Callahan or some other law enforcement officer wants to go out and check on a time and find out who brought the gun, you've got some information about it. You got the person who bought the gun, where the gun was purchased, the date the gun was purchased, the person's address, the person's physical description, the person's date of birth, the person's social security -- I mean,

the driver's license number.

That's not an attempt to deceive.  I'm telling you what's going on.  Now, if you want to go out and be engaged in this transaction of getting guns illegally, why go through all the bother and purpose of doing that?  Why -- literally, what you're doing is you're putting a big old red target on your back in neon saying, "Here I am.  Come and get me.  I'm easy to find.  I live in Walterboro.  Here I am.  You want to find out who bought the gun?  I'm here.  I'm telling you who it is.  It's me."

And not one shred of evidence.  Absolutely zero shred of evidence that he was even near or had any involvement in the purchase of that gun, and you've got to find beyond a reasonable doubt he had something to do in participating and making this statement on these forms untruthfully.  If you can't, then he's not guilty.  If you can't make that connection, then he's not guilty of the conspiracy.  It's just really that simple.  The lack of evidence is telling.  The lack of evidence is telling.  Mr. Fishburne has zero obligation, zero obligation to produce one piece of evidence in this case.

But you do have a joint exhibit or a Court Exhibit that exonerates him.  "On Saturday, March 31st, 2018" -- does that date sound familiar?  "Quentin Fishburne and I, Renata Ellison, were riding together just prior to his arrest.  Quentin picked me up from 103 Mincey Street."  That's

pretty detailed information; isn't it?

"Quentin exited the car and walked around to the passenger side.  I proceeded to the driver's seat of the Camaro.  Once into the car, I placed my firearm" -- my firearm -- "under the driver's seat.  Hence, we were supposed to have lunch at Golden Corral.  However, he received a call from another female.  This prompted an argument between he and I.  As a result, I drove back to Mincey Street.  Still upset about the phone call, I got out the (verbatim) and Quentin left."  Left out a word there.

"Subsequently, I left my firearm under the driver's seat.  Quentin was unaware that my firearm was in the car."  "Quentin was unaware that my firearm was in the car."  Knowingly possession, negated in that one statement.

"As follows, I contacted Officer Duboise the next day to retrieve my firearm but was unsuccessful.  I explained to Officer Duboise that Quentin was unaware" -- but he don't care -- "that the firearm was in my car.  Officer Duboise said that Quentin would have to plead guilty before I would get my firearm."  Notarized.

Now, this, alone, negates a conviction, particularly on March 31st, 2018.  She's telling you by this statement he ain't guilty.  He doesn't know the gun was under the car seat.  Then go back to Officer Duboise's examination of the car.  You see him in the car with his hand stuck in there

rummaging around for a few seconds until he's found something hiding under the seat; not on the floorboard, not in plain view, but we can't have this, folks.  Oh, goodness gracious, no.

Agent Callahan goes to see her, because this is devastating to the Government.  This kills their case, and he confronts her with some information that she may not know that he has, and she gets concerned.  Like, "Uh-oh, I may be in trouble with what you're telling me.  I want to back off.  I want to recant my story.  I want to get me a lawyer, because I don't want to get in any more trouble with what you're telling me," and guess what happened to her?  Her instincts were right.  She got indicted.  She got indicted as his co-defendant, co-conspirator.  Yeah, she's dadgum scared, because the federal government is about to drop a load of bricks on her head, and she better do something fast to protect herself, but it was a little too late.  She got indicted, and she got scared, and she got annoyed.

For some reason now, folks, we're supposed to just tear this thing up and ignore it completely, because she got scared, and her instincts were right.  She got indicted.  So should we just ignore this completely and throw it away as nothing?  I mean, we -- what she saying was a mistake?

You don't have to believe it, but it provides you at the very minimum with reasonable doubt.  Let's just

| | |
|---|---|
| 12:02PM | 1 |

leave it at that.

                    I'm sure there's some other things I need to say
to you.  I'm going to apologize if I don't cover all my tracks.
I think I've said enough.  Your verdict must be unanimous.  All
of y'all have to agree.  Your verdict has to be fair.  It has
to be based not on what I say or what the Government lawyers
say.  It has to be based on the evidence, but it has to be
truthful.

                    Even if you think he may be guilty, even if you
think he's probably guilty, even if you think there's --
some funny thing is going on with this, even if you think,
"Well, you know, he's got these prior records.  You know, he
should be guilty of something," that don't cut it.  That's not
the standard.  The standard is very simple:  Whether or not the
Government has proved to you each and every one of the elements
of all three counts beyond a reasonable doubt; whether or not
he participated in knowingly, willfully in the conspiracy to
lie on federal forms when the gun was purchased; whether he
knowingly had actual knowledge that the guns were actually in
the car that did not belong to him, not titled in his name, and
not titled to -- the gun's not titled in his name.

                    Evidence that I've gone over with you, you've
got to establish each and every one of those elements beyond a
reasonable doubt.  They can't -- they haven't done it.  Your
verdict must be not guilty.

12:04PM 1    Thank you for your time.  Thank you for your

12:04PM 2 patience.

12:04PM 3    **THE COURT:**  Mr. Schoen?

12:04PM 4    **MR. SCHOEN:**  Good morning, ladies and gentlemen.

12:04PM 5 Mr. Shahid has spent a lot of his time focusing on what

12:05PM 6 evidence is not in this case and not a lot of time talking

12:05PM 7 about what evidence is in this case, and what I want to do is

12:05PM 8 to address some of the things he said about evidence that

12:05PM 9 wasn't here, and then to remind you of the evidence that is

12:05PM 10 here.

12:05PM 11    So let's start with some of the evidence, some

12:05PM 12 of the objections he's raising, some of the evidence he says is

12:05PM 13 not here.  Start with his favorite, fingerprints, fingerprints,

12:05PM 14 fingerprints.  He's got this six, four, zero thing.  I got

12:05PM 15 three numbers for you, too.  11, dozens, zero.  I asked Special

12:05PM 16 Agent Callahan, who's been an ATF Special Agent for 11 years,

12:05PM 17 "How many guns have you submitted for fingerprinting?"  And he

12:05PM 18 told you the answer was dozens, and I asked him how many

12:05PM 19 fingerprints.  "How many fingerprints have you ever gotten off

12:05PM 20 of any of those guns?"  Zero.  Zero.

12:05PM 21    The argument that we deprived Mr. Fishburne of

12:06PM 22 exonerating evidence because, "Hey, you know, if there weren't

12:06PM 23 any fingerprints on that gun, then obviously he couldn't be

12:06PM 24 guilty," is ridiculous.  Dozens of guns he submitted, never

12:06PM 25 gotten fingerprints off of those guns.  And then ask yourself,

12:06PM 1   "What's the purpose of finding fingerprints on something?"  The

12:06PM 2   purpose is to show that somebody's hand touched it.

12:06PM 3          Look at the 2014 stop.  You've got something

12:06PM 4   better than fingerprints.  You've got an officer on the stand,

12:06PM 5   no reason to lie, just doing his job, driving down the street,

12:06PM 6   trying to stop cars running from him, and he's saying, "Listen,

12:06PM 7   I saw two guys waving guns at me.  I backed my vehicle off

12:06PM 8   because they were waving at guns at me."  And his question,

12:06PM 9   "Are you sure it was a gun?"  I loved his answer.  "It

12:06PM 10  certainly wasn't a Bible."  "It certainly wasn't a Bible."

12:06PM 11         And he radios out to the other officers,

12:07PM 12  "They've got something in their hands."  Why is he doing that?

12:07PM 13  Because he thinks what they got in their hands is a gun.  You

12:07PM 14  saw that officer, big strong guy, calm on the stand.  You heard

12:07PM 15  him when he was in those woods, yelling, screaming, "Let me see

12:07PM 16  your hands."  "I will f-ing kill you."  He was terrified, and

12:07PM 17  he was scared because he had seen guns, and then, of course,

12:07PM 18  what's found on the floorboard?  Two guns.

12:07PM 19         Mr. Shahid wants to make a big deal out of the

12:07PM 20  fact that the two guns were found on the right side of the

12:07PM 21  console as opposed to the left side of the console.  If I was

12:07PM 22  there, maybe I would throw it on the right side, too.  It

12:07PM 23  doesn't prove -- it doesn't prove anything, the fact that

12:07PM 24  there's two guns right on that passenger's side versus on the

12:07PM 25  driver's side.

1    The purpose of fingerprints is to show that a

2 person's hands have touched something.  The Judge is going to

3 give you a very specific instruction, and listen to this

4 instruction.  He's going to say, the Government is not

5 obligated, the Government is not obligated to use any

6 particular technique to investigate a case.  What you have to

7 do is to evaluate the evidence that we have brought you and

8 say, "Is that evidence enough?"  And when you looked at that

9 2014 case, we've not just brought you strong circumstantial

10 evidence, we've brought you direct evidence.  Officer says,

11 "Look, I saw these guys with guns."

12    Two guns are found, and where does that gun come

13 from?  That gun was purchased by Mr. Fishburne's girlfriend.

14 They're driving Mr. Fishburne's wife's car.  How do you

15 possibly explain that one?  "Honey, I'm going to need you to

16 stop letting my girlfriend put her gun in your car," said no

17 one ever.  There's no explanation for it, other than

18 Mr. Fishburne knew that that gun was in there, and he knows

19 that those two guns are in there, and his passenger knows that

20 they're in there.  That's joint possession.  It's very simple.

21    And then they point out, well, there's no

22 fingerprints from the 2018 stop, make a big deal out of the

23 fact that that gun wasn't fingerprinted.  But you know what we

24 brought you?  We brought you something very, very similar to

25 fingerprints.  Ballistic fingerprints; that is, you heard from

12:09PM 1 Special Agent Callahan about the three shell casings that were

12:09PM 2 recovered from that shooting and how he submitted these shell

12:09PM 3 casings and how Chad Smith, the examiner who's done thousands

12:09PM 4 of these examinations with SLED, looked at this gun and looked

12:09PM 5 at these shell casings and determined that this gun fired these

12:09PM 6 three shell casings.

12:09PM 7 Of course, that wouldn't be a big deal if this

12:09PM 8 was just some random shooting, but it's not some random

12:09PM 9 shooting. You have this stipulation that the Defendant entered

12:09PM 10 into. See if I can find this. Right here, where he says --

12:10PM 11 Quentin Fishburne was convicted of a crime in connection with

12:10PM 12 the shooting. How much of a coincidence is that? The same gun

12:10PM 13 that's found under his seat is tied back to a crime where he's

12:10PM 14 pled guilty to an offense in connection with it? He doesn't

12:10PM 15 just admit that he's there. He ad -- he pleads guilty to a

12:10PM 16 crime in connection with this particular shooting.

12:10PM 17 Mr. Shahid makes a big deal out of the fact, you

12:10PM 18 know, authorities were not able to determine whether or not

12:10PM 19 Mr. Fishburne fired any of the shots on November 6th of 2015.

12:10PM 20 That's true. But guess what they didn't have? They didn't

12:10PM 21 have Mr. Fishburne driving around with this under his seat.

12:10PM 22 They didn't have a match between this gun and these shell

12:11PM 23 casings. You do. We don't have to prove that Mr. Fishburne

12:11PM 24 was involved in that shooting. We don't have to prove that he

12:11PM 25 possessed that gun on that night, but it is an incredible,

incredible coincidence, stacking up on one after another
incredible coincidence, that the same gun is that he's found
with in 2018 just happens to match a shell casing from a 2015
shooting where he's present.

Mr. Shahid argues that if you can't see movement
in a vehicle, there must be reasonable doubt.  You can't see
what's going on in that vehicle, so therefore the officer
couldn't see what was going on in that vehicle.  You can't see
hardly anything out of that video.  It's not of particularly
high quality.  There's rain all over the windshield.  I
certainly hope that that officer can see more than you can see
in that video, because otherwise he shouldn't be driving,
because you really can't see what's going on.

You have no reason not to believe the officer's
testimony that he saw two people driving with those guns in
their hands.  That's strong evidence.  You can convict him --
if we brought him in and tried him on that just that, you could
convict him on the testimony of that officer saying, "Hey, I
saw these two guys, and both of them had guns in their hands,"
especially when you can then trace that firearm right back to
someone who's in an intimate relationship.  The evidence in the
2014 situation, way, way beyond reasonable doubt.

Then you've got the 2018 situation.  Remember
what happens there.  He pulls up to a checkpoint.  Mr. Shahid
wants to go on and on about where the checkpoint is located and

tell them how to do their job with the body cameras and go
after them for failing to write the report in this particular
order.  Who cares?  Who cares?  What's the purpose of a body
camera?  So that you can see what's going on, and when you
watch that video, if you watch the dash cam from Officer Cook's
car, you'll see Officer Duboise come out.  He's got a gun in
his hand.  He was standing right there.  You have two officers
searching this car at the same time.  There's like a suggestion
that they're doing something improper?  There's been no
evidence of that.  So what if he's chewing gum?  Who cares?

Evidence on that 2018 shooting is strong in and
of itself.  That evidence is entitled to substantial weight,
because, again, what a coincidence.  It just so happens that
that gun was purchased by his girlfriend, the same person who
purchased the other gun.  Powerful, powerful evidence
overcoming reasonable doubt showing that he was in possession
of that gun.  He knew that gun was there.  How do you know he
knew it was there?  The first thing he says to the officer when
he rolls up is, "Anything you find in this car isn't mine."
He's demonstrating that he knows he's got something in that car
he's not supposed to have.

Then they go after him -- they go after the
cops, saying, "Well, you know, there's no way they could have
smelled marijuana.  They didn't find marijuana ashes."  What
did you hear?  Quentin Fishburne has marijuana in his crotch.

Of course the officer could smell marijuana. The marijuana is on Quentin Fishburne, and Quentin Fishburne is sitting in the car.

He's alone. The car belongs to his mom. That gun belongs to his girlfriend. Again, explain that connection. How in the world does that gun get into that car without Quentin Fishburne knowing it? It defies logic.

Then there's that conspiracy count, and the question is how do you know when Mr. Fishburne joined in the conspiracy? Let's be clear what the conspiracy is. It's a big scary-sounding word. Essentially, it's an agreement by two people to violate the law and act in furtherance of that agreement, and what we've got here -- the most powerful evidence of the conspiracy is a pattern, and it is a pattern that repeats itself.

First we need to be able to show that Renata Ellison is involved in straw purchasing, that she's going in and she's buying guns that are not for her, that they're for somebody else. She's lying on this form, and you've got these forms. It's Exhibit 10, I believe. You'll get it back. The form basically -- you have to say, "I'm the actual buyer of the firearm," and she checks "yes" every single time on these forms. But if the goal of buying guns is to make sure that somebody else gets caught with them by the police, she is batting a thousand. She is three for three.

12:16 PM
12:16 PM
12:16 PM
12:16 PM
12:16 PM
12:16 PM
12:16 PM
12:16 PM
12:16 PM
12:16 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM
12:17 PM

1    You heard about first gun she buys.  She buys

2    this gun, and it's used in a shooting and linked by shell

3    casings to a shooting that her husband is a suspect in, and

4    then the police recover it when they're chasing some other

5    unidentified male, not Ms. Ellison.  They find that gun.  The

6    second gun she purchases is with Quentin Fishburne under --

7    inside the vehicle that he's driving, which happens to be his

8    wife's vehicle, and the third gun she purchases is this Smith &

9    Wesson M&P Shield that you've got that he gets caught with in

10   2018.  Pattern.  Again and again and again.  She's not buying

11   these guns for herself.

12           And what did Special Agent Callahan tell you

13   about the kind of gun you got here?  A .40 caliber, high

14   recoil, because it's a small gun with a lot of bang.  Do we

15   think Ms. Ellison bought this gun because she wanted this gun?

16   She bought this gun because Mr. Fishburne wanted this gun.

17   They don't have to write out some sort of agreement.  They

18   don't have to have a formal business partnership or an LLC.

19   They just got to get together, and he's got to say, "Hey, I

20   need you to get me a gun."  Is there any, any doubt in your

21   mind that she bought that gun because Quentin Fishburne asked

22   her to get him a gun?

23           Look at the timing of it.  He gets arrested in

24   May of 2014.  That Jimenez gun is taken away from him.  It's

25   put in evidence.  Before she could even go back and claim the

gun, she has gone out and bought another gun, and that's the gun that he's gotten caught with.

At the end of the day, the question is not did the police do everything perfectly?  Was this traffic checkpoint a model of how to enforce the traffic laws?  The question is is the evidence that we brought sufficient to eliminate not all the doubt, reasonable doubt.  Do you have any reasonable doubts about the evidence we've brought you?  And the answer is no, because when you step back, and you look the big picture, all of these individually -- all of these things individually by themselves are sufficient.  When you look at them all together, that is an inedible, incredible, unbelievable number of coincidences and connections.

The Judge is going to say a little bit about circumstantial evidence.  Again, we've brought you a lot of direct evidence, testimony.  "Hey, it's in his hand."  Evidence about -- showing shell casings matching that crime scene.  Testimony that the gun is right under his seat.  But we've also -- if you look at this entire situation, there's powerful circumstantial evidence.  Here's what the Judge is going to say.  He's going to give you an example of circumstantial evidence.  He's going to say that circumstantial evidence can be weighed by you in the same way you can weigh direct evidence.

He's going to say that, for example, if you were

| | |
|---|---|
| 12:19PM | 1 |

to go to sleep at night on a cold night and you were to look
outside and the ground is clear when you go to sleep, you wake
up the next morning and the ground is covered by snow.  You
didn't see a snowstorm.  You didn't actually witness those
flakes falling, but they're really, really powerful evidence
that sometime between when you went to bed and when you woke
up, it snowed, because you know from your common experience
that snow doesn't just, you know, spontaneously appear.  Use
your common sense to deduce one fact from the other.

When you take the totality of the situations,
all three of the crime scenes we've told you about, the fact
that the same person bought both guns, that both guns are in
vehicles that belong to members of Mr. Fishburne's family that
he's driving.  When you take all of those things together,
there's just no way it's a coincidence.  There's just no way.

Three crime scenes, two guns, one purchaser, all
of them connected by one man, Quentin Fishburne, and zero
reasonable doubt.  Find him guilty.  Thank you.

THE COURT:  Okay.  I'm going to let you go back to
the jury room and relax.  I'll send the marshal back to give
you the menus.  You can pick out your lunch, and when you come
back, we'll give you the final charge on the law, and by the
time that's over, hopefully your lunch will be here.

(Jury out at 12:21 p.m.)

THE COURT:  Anything else?

| | | |
|---|---|---|
| 12:21 PM | 1 | **MR. SHAHID:** Not by the Defendant. |
| 12:21 PM | 2 | **MR. SCHOEN:** Nothing from the Government. |
| 12:21 PM | 3 | **THE COURT:** Okay. Why don't y'all come up here for a |
| 12:21 PM | 4 | second? This is off the record. |
| 12:21 PM | 5 | (Discussion off the record.) |
| | 6 | (Recess from 12:21 p.m. to 12:43 p.m.) |
| 12:43 PM | 7 | (Call to order of the Court.) |
| 12:43 PM | 8 | **THE COURT:** Take your seats. Thanks. Anything |
| 12:43 PM | 9 | before I bring the jury back in? |
| 12:43 PM | 10 | **MR. SCHOEN:** Nothing from the Government. |
| 12:43 PM | 11 | **MR. SHAHID:** Not by the Defendant. |
| 12:43 PM | 12 | **THE COURT:** Okay. At sidebar we discussed which |
| 12:43 PM | 13 | juror we're going to excuse, and by agreement, the Government |
| 12:44 PM | 14 | and the Defendant agreed to excuse Juror Thomas. Is that |
| 12:44 PM | 15 | correct? |
| 12:44 PM | 16 | **MR. SHAHID:** That's correct. |
| 12:44 PM | 17 | **MR. SCHOEN:** Yes, Your Honor. |
| 12:44 PM | 18 | **THE COURT:** Okay. Good. Thank you. |
| | 19 | (Jury in at 12:44 p.m.) |
| 12:46 PM | 20 | **THE COURT:** Okay. You can be seated. Thank you. |
| 12:46 PM | 21 | I'm going to give you the closing charge, and |
| 12:46 PM | 22 | you each have a copy of it. You can follow along with me if |
| 12:46 PM | 23 | you want to. If you don't want to, you don't have to. So I'm |
| 12:46 PM | 24 | going to read it. |
| 12:46 PM | 25 | Members of the jury, now that you've heard all |

12:46PM  1  the evidence and the arguments by the lawyers, it's my duty to

12:46PM  2  instruct you on the law that applies to this case.  These

12:46PM  3  instructions will be in three parts.  First, the instructions

12:46PM  4  on general rules that define and control the jury's duties.

12:46PM  5  Second, the instructions that state the rules of law you must

12:46PM  6  apply.  In other words, what the Government must prove to make

12:46PM  7  the case.  And third, some rules for your deliberations.

12:46PM  8          It is your duty to determine the facts from all

12:46PM  9  the evidence in the case.  To those facts you must apply the

12:46PM  10  law as I give it to you, and you must follow that law whether

12:46PM  11  you agree with it or not, and you must not be influenced by any

12:46PM  12  personal likes, or dislikes, opinions, prejudice or sympathy.

12:46PM  13  That means you must decide the case solely on the evidence

12:47PM  14  before you and according to the law.  You will recall that you

12:47PM  15  took an oath promising to do that yesterday.

12:47PM  16          In following my instructions, you must follow

12:47PM  17  all of them and not single out some and ignore the others.

12:47PM  18  They are all equally important; and you must not read into

12:47PM  19  these instructions or anything I may have said or done any

12:47PM  20  suggestion as to what verdict you should return.  That's a

12:47PM  21  matter entirely for y'all to decide.

12:47PM  22          Now, in determining the facts of the case, you

12:47PM  23  should consider the following evidence:  The sworn testimony of

12:47PM  24  the witnesses both on direct and cross-examination, regardless

12:47PM  25  of who called the witness; any exhibits that have been received

into evidence; and any facts which all the lawyers have agreed or stipulated.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I'll list them for you now.

The arguments and the statements by the lawyers are not evidence. The lawyers are not witnesses. What they've said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

Questions and objections by the lawyers are not evidence. Attorneys have a duty to their client to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it. If the objection was sustained, you should disregard the question of the lawyer. If it was overruled, treat the answer as any other. And, of course, anything you've seen or heard when the Court is not in session is not evidence. You are to decide this case solely on the evidence received in this trial.

Now, there are two kinds of evidence, direct evidence and circumstantial evidence. Direct evidence is

direct proof of a fact, such as the testimony of an eyewitness.
Circumstantial evidence is indirect evidence; that is, proof of
a chain of facts from which you could find that another exists,
even though it's not been proved to you directly.  For example,
if you go to bed on a winter's night and the ground is clear,
and you wake up the next morning and see snow on the ground,
you have circumstantial evidence that it snowed last night.

You are entitled to consider both kinds of
evidence.  The law permits you to give equal weight to both,
but it is for you to decide how much weight to give to any
evidence.  It is for to you decide whether a fact has been
proved by circumstantial evidence.  In making that decision,
you must consider all the evidence in the light of reason, your
common sense, and experience.

Now, during the trial, items were received into
evidence as exhibits.  These exhibits will be sent to the jury
room with you when you begin to deliberate.  Examine the
exhibits if you think it'll help in your deliberations.

Now, in deciding what the facts are, as I said,
you must consider all the evidence.  In doing this, you must
decide which testimony to believe and which testimony not to
believe.  You may believe or disbelieve all or any part of any
witness's testimony.

In making that decision, you can take into
account a number of factors, including the following:  Was that

witness able to see or hear or know the things about which that witness testified? How well was the witness able to recall and describe those things to you? What was the witness's manner while testifying? Did the witness have an interest in the outcome of this case or any bias or any prejudice concerning any party or any matter involved in the case? How reasonable was the witness's testimony considered in the light of all the evidence in the case? And had that witness's testimony been contradicted by what that witness had said or done at another time or by the testimony of other witnesses or by other evidence?

Now, in deciding whether or not to believe a witness, keep in mind people sometimes forget things. You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail. These are some of the factors you may consider in deciding whether to believe testimony.

Now, the weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has a greater weight than that of a larger number on the other. All of these are matters to be considered in finding the facts.

12:50PM
12:50PM
12:50PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:51PM
12:52PM

1     Now, a witness may be discredited or impeached

2 by contradictory evidence or by evidence that at some other

3 time the witness had said or done something, or failed to do or

4 say something, that is inconsistent with the witness's present

5 testimony.  If you believe any witness has been impeached and

6 thus discredited, it is your exclusive province to give the

7 testimony of that witness such credibility, if any, that you

8 think it deserves.

9     You heard testimony from an expert witness.  An

10 expert is allowed to express his opinion on those matters about

11 which he has special knowledge and training.  Expert testimony

12 is presented to you on the theory that someone who is

13 experienced in the field can assist you in understanding the

14 evidence or in reaching an independent decision on the facts.

15     In weighing the expert's testimony, you may

16 consider the expert's qualifications, his opinions, his reasons

17 for testifying, as well as all the other considerations that

18 ordinarily apply when you're deciding whether to believe a

19 witness's testimony.

20     You may give expert testimony whatever weight

21 you find it deserves in the light of all the evidence in the

22 case.  You should not, however, accept this witness's testimony

23 merely because he's an expert, nor should you substitute it for

24 your own reason, judgment, and common sense.  The determination

25 of the facts in this case rests solely with y'all.

Now, although Mr. Fishburne has been indicted, you must remember that an indictment is only an accusation. It is not evidence. Mr. Fishburne has pleaded not guilty to the Indictment. As a result of his plea of not guilty, the burden is on the Government to prove guilt beyond a reasonable doubt.

It is never the burden for any defendant to prove himself innocent. This burden never shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of testifying or calling any witnesses or producing any evidence.

The law presumes Mr. Fishburne to be innocent of these charges against him. I, therefore, instruct you that Mr. Fishburne is to be presumed by you to be innocent at this time and throughout your deliberations unless you, as a jury, are satisfied that the Government has proved his guilt beyond a reasonable doubt.

Mr. Fishburne began the trial here with a clean sate and a presumption of innocence. That remains with him even now as I instruct you and will continue with him in your deliberations unless you are convinced that Government has proven his guilt beyond a reasonable doubt.

If the Government has failed to carry its burden, it would be your duty under the oath that you took at the beginning of this case to find Mr. Fishburne not guilty.

Now, a defendant in a criminal case has an

12:53PM 1  absolute right under our Constitution not to testify.  The fact

12:53PM 2  that Mr. Fishburne did not testify must not be discussed or

12:53PM 3  considered by you in any way when deliberating and reaching

12:53PM 4  your verdict.

12:53PM 5  No presumption of guilt may be raised and no

12:53PM 6  inference of any kind may be drawn from the fact that a

12:53PM 7  defendant decided to exercise his privilege under the

12:53PM 8  Constitution and not testify.

12:53PM 9  As I have told you before, it is not up to

12:53PM 10  Mr. Fishburne to prove that he is innocent.  It is up to the

12:53PM 11  Government to prove that Mr. Fishburne is guilty beyond a

12:53PM 12  reasonable doubt.

12:53PM 13  You are to perform the duty of finding the facts

12:53PM 14  without bias or prejudice as to any party.  You are to perform

12:53PM 15  your final duty -- excuse me -- in an attitude of complete

12:53PM 16  fairness and impartiality.

12:53PM 17  This case is important to the Government because

12:53PM 18  the enforcement of criminal laws is a matter of prime concern

12:54PM 19  to the community.  Equally, it is important to Mr. Fishburne

12:54PM 20  who is charged with serious crimes.

12:54PM 21  The fact that the prosecution is brought in the

12:54PM 22  name of the United States of America entitles the Government to

12:54PM 23  no greater consideration than that accorded to any party to any

12:54PM 24  other litigation.  By the same token, it's entitled to no less

12:54PM 25  consideration.  All parties, whether the Government or

individuals, stand as equals at the bar of justice.

Now, you have heard the testimony of law enforcement officials. The fact that a witness may be employed by the federal government or state agency as a law enforcement official does not mean that his testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of any other witness. It is your decision after reviewing all the evidence whether to accept the testimony of the law enforcement witness and to give that testimony whatever weight you find it deserves just as you would any other witness.

Now, you've heard testimony of witnesses and argument by counsel that the Government did not use specific investigative techniques. You may consider these facts in deciding whether the Government has met its burden, because as I told you, you should all look to the evidence in deciding whether the Defendant is guilty. However, you are also instructed that there is no legal requirement that the Government is required to use any specific investigative techniques to prove its case.

Now, the question of possible punishment of Mr. Fishburne is no concern to you and should not in any sense enter into or influence your deliberations. If a defendant in any case is found guilty, the duty of imposing the sentence rests exclusively with me.

Your function is to weigh the evidence in the case and to determine whether or not the Government has proven that Mr. Fishburne is guilty beyond a reasonable doubt solely on the basis of the evidence. Under your oath as jurors, you may not allow consideration of the punishment that may be imposed upon Mr. Fishburne if he's convicted to influence your verdict in any way or enter into your deliberations.

Some of y'all have taken notes at trial. Remember that these notes are for your own personal use. They are not to be given or read to anyone else, and they are not to be used in place of your memory.

Now, the Second Superseding Indictment contains three counts. You must consider each count separately and return a separate verdict of guilty or not guilty for each. Whether you find Mr. Fishburne guilty or not guilty of one offense should not affect your verdict on any other offense charged. I'm going to give you instructions pertinent to the charges against Mr. Fishburne.

Now, Counts 1 and 5 are felon in possession of a firearm. Title 18 United States Code Section 922(g)(1) provides that it will be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition.

Counts 1 and 5 charge Mr. Fishburne with

violating Section 922(g) of Title 18 of the United States Code on two separate occasions, March 31, 2018, and May 2, 2014, respectively.  In order for you to find Mr. Fishburne guilty of this charge, the Government must prove the following elements beyond a reasonable doubt as to each count.

Number 1, that Mr. Fishburne had previously been convicted of a crime punishable by a term of imprisonment exceeding one year.  Number 2, that Mr. Fishburne knew he had been previously convicted of a crime punishable by a term of imprisonment for one year.  Number 3, that the firearm or ammunition had traveled in interstate or foreign commerce at some point during its existence.  And number 4, that Mr. Fishburne knowingly possessed a firearm or ammunition; that is, Mr. Fishburne knew the item was a firearm or ammunition and the possession was voluntary and intentional.

Now, the parties have stipulated to the existence of the first, second, and third elements, meaning the Government has satisfied its burden of proving those elements beyond a reasonable doubt.  However, the Government still has the burden to prove element four beyond a reasonable doubt.

If you find from your consideration of all the evidence that the Government has proven each and every one of those elements beyond a reasonable doubt as to each count, then you should find Mr. Fishburne guilty of Counts 1 and 5.  If, on the other hand, you find from your consideration of all the

12:57 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:58 PM
12:59 PM
12:59 PM
12:59 PM
12:59 PM
12:59 PM
12:59 PM
12:59 PM

1   evidence that the Government has not proven each of these

2   elements beyond a reasonable doubt, then you should find

3   Mr. Fishburne not guilty of Counts 1 and 5.

4         Now, Count 2 is conspiracy to make false

5   statements in furtherance of the conspiracy.  Title 18 USC

6   Section 371 makes it a federal crime for anyone to conspire

7   with someone else to do something which, if actually carried

8   out, would be a violation of federal law.  Title 18 USC Section

9   922(a)(6) makes it a crime for a person to make a false

10   statement to a licensed firearms dealer in connection with the

11   acquisition of a firearm.

12         Count 2 charges that beginning at a time unknown

13   and continuing through August 15th, 2018, Mr. Fishburne and

14   Ms. Ellison unlawfully, knowingly, and willfully did conspire,

15   combine, confederate, and agree together with each other and

16   persons known and unknown to execute a scheme of knowingly and

17   willfully violating Section 922(a)(6); that is, to make false

18   statements to licensed firearms dealers in connection with the

19   acquisition of firearms.

20         Now, in order for you to find Mr. Fishburne

21   guilty of this charge, the Government must prove each of the

22   following elements beyond a reasonable doubt:  Number 1, that

23   two or more persons entered into an unlawful agreement starting

24   at a time unknown and continuing through August 15th, 2018 to

25   commit the crime of making false statements to licensed

firearms dealers in connection with the acquisition of firearms; number 2, that Mr. Fishburne knew of the conspiracy; and number 3, that Mr. Fishburne knowingly and voluntarily became a part of the conspiracy.

Under the law, a conspiracy is a kind of partnership in criminal purposes. Willful participation in such a scheme is sufficient to complete the offense of conspiracy even though the ultimate criminal object or objects of the conspiracy are not accomplished or carried out.

In order to establish a conspiracy offense, it is not necessary for the Government to prove that the members of the conspiracy had entered into any formal type of agreement. Existence of a conspiratorial agreement need not be proved by direct evidence, but may be inferred from the facts and circumstances of the case.

If you are satisfied that the conspiracy charged in the Indictment existed, you must next whether -- find whether Mr. Fishburne was a member of that conspiracy. In deciding whether Mr. Fishburne was, in fact, a member of the conspiracy, you should consider whether that Defendant knowingly and willfully joined the -- willfully joined the conspiracy.

The word "knowingly" as that term has been used in these instructions means that the act was done voluntarily and intentionally and not because of mistake or accident.

The word "willfully" as that term is being used in these instructions means that the fact was committed -- the act was committed voluntarily and purposefully with the specific intent to do something the law forbids; that is to say, with a bad purpose either to disobey or disregard the law.

The extent of a defendant's participation has no bearing on the issue of the Defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor roles in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.

I want to caution you, however, that a defendant's mere presence at the scene of an alleged crime does not by itself make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make a defendant a member of the conspiracy. A person may know or be friendly with a criminal without being a criminal himself. Mere similarity of conduct or the fact that they may have gotten together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge

1:01 PM
1:01 PM
1:01 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:02 PM
1:03 PM
1:03 PM

1   or acquiescence without participation in the unlawful plan is

2   not sufficient.  Moreover, the fact that the acts of a

3   defendant without knowledge merely happen to further a purpose

4   or objective of the conspiracy does not make a defendant a

5   member.  More is required under the law.  What is necessary is

6   that the -- a defendant must have participated with the

7   knowledge of at least some of the purposes or objectives of the

8   conspiracy and with the intention of accomplishment of those

9   unlawful acts.

10           Now, once the existence of a conspiracy is

11   established, evidence establishing beyond a reasonable doubt a

12   connection of Mr. Fishburne with the conspiracy, even though

13   the connection is slight, is sufficient to prove that he's --

14   he was a knowing participant in the conspiracy.

15           In your consideration of the evidence, you

16   should determine whether or not Mr. Fishburne knowingly took

17   part in a conspiracy to make false statements as to licensed

18   firearms dealers in connection with the acquisition of

19   firearms.  The Government can prove a conspiracy by showing an

20   agreement between Mr. Fishburne and Ms. Ellison that

21   Ms. Ellison would make false statements with regard to the

22   acquisitions of firearms by, for example, indicating that she

23   was the actual purchaser of the firearm when, in fact, she was

24   buying the firearm for Mr. Fishburne.

25           If the Government proves the necessary elements

beyond a reasonable doubt with respect to the conspiracy, you should find Mr. Fishburne guilty of Count 2.  If, on the other hand, you find from your consideration of all of the evidence that the Government has failed to prove any one of these elements beyond a reasonable doubt, you should find Mr. Fishburne not guilty of Count 2.

Now, you've heard evidence relating to a Bersa 9 millimeter pistol.  Evidence relating to the Bersa 9 millimeter is to be considered by you only for the limited purpose of impeaching the statements of Renata Ellison or evaluating her intent.  The Government has not charged Mr. Fishburne with any crimes related to the Bersa 9 millimeter.  Evidence relating to the Bersa 9 millimeter should be considered by you only as it relates to the believability of the statements made by Ms. Ellison or as it relates to the intent of Ms. Ellison and not as evidence of any crime committed by Mr. Fishburne or evidence of his intent.

You will note that the Indictment charges that the offenses were committed on or about certain dates.  Proof need not establish with certainty the exact date of an alleged offense.  It is sufficient if the evidence in the case establishes beyond a reasonable doubt that an offense was committed on the dates reasonably near the dates alleged.

Now, what is possession?  A person possesses an object if he knowingly has the ability and the intention to

1:04 PM 1   exercise control over that object, either directly or through

1:04 PM 2   others.  A person may possess an object even if he is not in

1:04 PM 3   physical contact with it and even if he doesn't own it.  More

1:04 PM 4   than one person can possess an object.  If two or more persons

1:04 PM 5   share possession, that is called joint possession.  If only one

1:04 PM 6   person possesses an object, it is called sole possession.  The

1:04 PM 7   term "possession" in these instructions includes both joint and

1:04 PM 8   sole possession.

1:04 PM 9         Now, a person's flight immediately after the

1:04 PM 10   commission of a crime or after being accused of committing a

1:04 PM 11   crime is not enough by itself to establish guilt, but it is a

1:04 PM 12   fact that may be considered by you as evidence of guilt.

1:04 PM 13   Flight under the circumstances may be motivated by a variety of

1:05 PM 14   factors, some of which are fully consistent with innocence.

1:05 PM 15   You must decide whether there is evidence of flight.  If you

1:05 PM 16   decide there is evidence of flight, you must consider then

1:05 PM 17   whether the flight shows a consciousness of guilt.

1:05 PM 18         Now, when y'all go back and get your lunch, the

1:05 PM 19   first thing y'all need to do is elect a foreperson.  The

1:05 PM 20   foreperson will preside over your deliberations and speak for

1:05 PM 21   you here in open court.

1:05 PM 22         Each of you must decide this case for yourself,

1:05 PM 23   but you should do so only after you have considered all the

1:05 PM 24   evidence, discussed it fully with your fellow jurors and

1:05 PM 25   listened to the views of the other jurors.  Don't be afraid to

1:05 PM 1    change your opinion if a discussion persuades you that it

1:05 PM 2    should, but don't come to a decision simply because the other

1:05 PM 3    jurors think it's right.

1:05 PM 4         It's important that each of you attempt to reach

1:05 PM 5    a unanimous verdict, but, of course, only if each of you can do

1:05 PM 6    so after making your own conscious decision.  Don't change an

1:05 PM 7    honest belief about the weight and effect of the evidence

1:05 PM 8    simply to reach a verdict.  In other words, don't change your

1:05 PM 9    opinion solely for the sake of reaching a unanimous verdict.

1:06 PM 10    After you've reached a unanimous agreement on a

1:06 PM 11   verdict, the foreperson will fill in this form, which is the

1:06 PM 12   verdict form that will be given to you.  You sign and date them

1:06 PM 13   and advise the marshal outside your door that you're ready to

1:06 PM 14   return to the courtroom.

1:06 PM 15    If it becomes necessary during your

1:06 PM 16   deliberations to communicate with me, you can send a note

1:06 PM 17   through the marshal signed by your foreperson or by one or more

1:06 PM 18   members of the jury.  No member of the jury should ever attempt

1:06 PM 19   to communicate with me except by a signed writing, and I will

1:06 PM 20   communicate with any member of the jury on anything concerning

1:06 PM 21   this case only in writing or orally in open court.

1:06 PM 22    Remember you're not to tell anyone, including

1:06 PM 23   me, how the jury stands numerically or otherwise, until after

1:06 PM 24   you've reached a unanimous verdict or have been discharged.  As

1:06 PM 25   I said, this is the verdict form right here, got a blue back on

1:06 PM 1    it.  It's pretty simple.

1:06 PM 2            First, we, the jury following due deliberations

1:06 PM 3    in the above matter, unanimously return the following verdict.

1:06 PM 4    Count 1, felon possession of firearm, March 31, 2018.  As to

1:07 PM 5    Count 1, we unanimously find the Defendant, Quentin John

1:07 PM 6    Fishburne, guilty or not guilty.  Just check one of the two.

1:07 PM 7            Second, Count 2, conspiracy to violate Title 18 USC

1:07 PM 8    Section 922(a)(6).  As to Count 2, we unanimously find the

1:07 PM 9    Defendant, Quentin John Fishburne, not guilty or guilty.  Just

1:07 PM 10   check a box.

1:07 PM 11           Count 5.  As to Count 5, we unanimously find the

1:07 PM 12   Defendant, Quentin on Fishburne, not guilty or guilty.

1:07 PM 13   Foreperson sign it, date it, knock on the door, and come back,

1:07 PM 14   and we'll take the verdict.

1:07 PM 15           All right.  Y'all can now retire to your jury

1:07 PM 16   room, and hopefully your lunch and is there and begin your

1:07 PM 17   deliberations.  If all of y'all will go back except for

1:07 PM 18   Mr. Thomas.  You have to stay here with me.  So everybody else

1:07 PM 19   has to go back.  You'll get your lunch, I promise, Mr. Thomas.

1:07 PM 20           **THE ALTERNATE JUROR:**  Oh, I don't care.

1:07 PM 21           **THE COURT:**  Then I'll eat your lunch.

        22           (Jury out at 1:07 p.m.)

1:08 PM 23           **THE COURT:**  Okay.  Mr. Thomas, in criminal cases you

1:08 PM 24   have to have 12 jurors.  You can't have 13.  You can't have 11.

1:08 PM 25   So we bring in extra people.  As a matter of fact, we selected

1:08PM  1    14 when y'all were selected, and one of the -- one of the other

1:08PM  2    jurors had a medical emergency, so couldn't show up.  So we

1:08PM  3    want to thank you for your service in this case.  The good news

1:08PM  4    is you don't have to deliberate.  The bad news is you don't get

1:08PM  5    to deliberate, and the good news is you get to go home right

1:08PM  6    now if you want to.  Okay?  Thank you very much.

1:08PM  7         THE ALTERNATE JUROR:  All right.  Thank you.  Do I

1:08PM  8    need to give y'all this?

1:08PM  9         THE COURT:  You can keep it, or you can give it to

1:09PM  10   us.  No souvenirs, huh?

1:09PM  11        THE ALTERNATE JUROR:  No, sir.

1:09PM  12        THE COURT:  Okay.  No problem.

1:09PM  13             (Alternate juror excused.)

1:09PM  14        THE COURT:  Anything further?

1:09PM  15        MR. SHAHID:  Can we be excused?

1:09PM  16        THE COURT:  Just make sure that Catina has your cell

1:09PM  17   phone, and we'll contact you when they have a verdict or a

1:09PM  18   question, okay?

1:09PM  19        MS. HENDERSON:  Yes, sir.

1:09PM  20        THE COURT:  Thank y'all.

1:09PM  21        MS. HENDERSON:  Thank you.

        22        (Recess from 1:09 p.m. to 1:11 p.m.)

1:11PM  23             (Call to order of the Court.)

1:11PM  24        THE COURT:  Okay.  Speak or forever hold your peace.

1:11PM  25        MR. SHAHID:  I need to make a motion to dismiss,

1:11 PM 1    Judge.  I believe the Government has failed to prove their case

1:11 PM 2    beyond a reasonable doubt as to all three counts, particularly

1:11 PM 3    as to Count 2, the conspiracy.

1:11 PM 4            THE COURT:  Better late than never.  I'll take your

1:11 PM 5    motion under advisement and deny it, okay?  Anything else?

1:12 PM 6            MR. SHAHID:  That's it.  Thank you.

7            (Recess from 1:12 p.m. to 1:52 p.m.)

1:52 PM 8                (Call to order of the Court.)

1:52 PM 9            THE COURT:  Take your seats.  Thanks.  Y'all got

1:52 PM 10   copies of the question?

1:52 PM 11           MR. SCHOEN:  Yes, Your Honor.

1:52 PM 12           MR. SHAHID:  I do.

1:52 PM 13           THE COURT:  All right.  Do you have an answer?

1:52 PM 14           MR. SHAHID:  I think the answer is "no".

1:52 PM 15           THE COURT:  Okay.

1:52 PM 16           MR. SCHOEN:  I think it depends.  I think the

1:52 PM 17   question is -- it would depend on the situation.  I don't know

1:52 PM 18   that a simple "no" answer would be adequate.  If the person is

1:52 PM 19   carrying on their body, then I think you make an argument that

1:52 PM 20   it's not possession.  They got it sitting in the middle of a

1:52 PM 21   center console and you know it's there, and you're riding with

1:52 PM 22   them --

1:52 PM 23           THE COURT:  The question is, "Is it illegal for a

1:52 PM 24   convicted felon to be in a car with another individual who is

1:52 PM 25   legally carrying a firearm?"  Which means if he had a carry

| | | |
|---|---|---|
| 1:52 PM | 1 | license, he could carry it anywhere. |
| 1:53 PM | 2 |        **MR. SHAHID:** You can't be a convicted felon and |
| 1:53 PM | 3 | knowingly possess a firearm. That's -- I mean, that's -- so if |
| 1:53 PM | 4 | someone else has a gun who's legally carrying a gun -- |
| 1:53 PM | 5 |        **MR. SCHOEN:** Does the fact that the other person |
| 1:53 PM | 6 | who's in the vehicle has a legal right to have a gun destroy |
| 1:53 PM | 7 | the possibility of joint possession? I mean, if both people -- |
| 1:53 PM | 8 | if you've got a gun sitting in the center console -- |
| 1:53 PM | 9 |        **THE COURT:** We don't have a factual situation because |
| 1:53 PM | 10 | we got two guns in the first time and we have one gun -- two |
| 1:53 PM | 11 | guns and two persons the first time and one gun and one person |
| 1:53 PM | 12 | the second time, so I don't think joint possession is really an |
| 1:53 PM | 13 | issue. |
| 1:53 PM | 14 |        **MR. SHAHID:** Also interesting word they're using |
| 1:53 PM | 15 | here, Judge. "Carrying" a firearm, not -- didn't use the word |
| 1:53 PM | 16 | "possessing". They used the word "carrying". It's layman's |
| 1:53 PM | 17 | thought process obviously, but I think if we get too far into |
| 1:53 PM | 18 | kind of giving them fact scenarios, it's just going to confuse |
| 1:54 PM | 19 | the question. I think it's a very simple "yes" or "no" answer |
| 1:54 PM | 20 | we give them. Simply being with another person who's legally |
| 1:54 PM | 21 | carrying a firearm in an automobile is not illegal. |
| 1:54 PM | 22 |        **MR. SCHOEN:** The instructions the ATF give the |
| 1:54 PM | 23 | convicted felons is they need to stay away from firearms, can't |
| 1:54 PM | 24 | have them in their vehicles, can't ride around with people who |
| 1:54 PM | 25 | got them. We have cases where felons riding around with a |

1:54 PM 1 girlfriend's gun in the car poses a difficult -- different

1:54 PM 2 situation, but I think it just depends.  If the Court wants to

1:54 PM 3 give the answer "no", then obviously I think our answer would

1:54 PM 4 be it depends on whether or not they are jointly possessing

1:54 PM 5 that firearm, whether or not they're exercising dominion and

1:54 PM 6 control over it, whether they have any intent to exercise

1:54 PM 7 dominion and control over it.  I don't think that if you ride

1:54 PM 8 around with a girlfriend who's got a gun sitting there in the

1:55 PM 9 center console in between the two of you, and you know it's

1:55 PM 10 there and have an intent to possess it, that having your

1:55 PM 11 girlfriend gets you off.  It doesn't destroy the possibility of

1:55 PM 12 joint possession, but I'm fine with whatever answer the Court

1:55 PM 13 wants to give.

1:55 PM 14          THE COURT:  Or no answer at all.

1:55 PM 15          MR. SHAHID:  Sir?

1:55 PM 16          THE COURT:  Or no answer at all.

1:55 PM 17          MR. SHAHID:  Well, that's going to send them into a

1:55 PM 18 tailspin.

1:55 PM 19          THE COURT:  Well --

1:55 PM 20          MR. SHAHID:  If it's a simple question, if you're

1:55 PM 21 simply asking is it illegal for a convicted felon to be in a

1:55 PM 22 car with another person who is legally carrying a firearm, the

1:55 PM 23 simple answer to that is "no".  The other facts come into play

1:55 PM 24 that may change that answer.

1:55 PM 25          THE COURT:  Okay.  I guess the simple answer is

1:55 PM 1   "Depending upon the circumstances, no."

1:55 PM 2            MR. SCHOEN:  "Not necessarily" would be the answer

1:55 PM 3   probably.

1:55 PM 4            MR. SHAHID:  "Depending on the circumstances, no."

1:55 PM 5            THE COURT:  Right, or "not necessarily".  It's not

1:56 PM 6   always.

1:56 PM 7            MR. SCHOEN:  It just depends on the circumstance.

1:56 PM 8            MR. SHAHID:  Or you can answer it, say simply -- the

1:56 PM 9   simple question provides a simple answer of "no".  If there's

1:56 PM 10  more facts behind it, there may be a different answer.  I don't

1:56 PM 11  think we need to complicate this too much.  I think it's very

1:56 PM 12  clear.

1:56 PM 13           MR. SCHOEN:  I just don't want the jury to have the

1:56 PM 14  impression that if they were to believe that this guy, Maurice

1:56 PM 15  White, was legally allowed to have firearms, that they can roll

1:56 PM 16  around with two guns sitting on the floorboard right next to

1:56 PM 17  Mr. Fishburne.  As long as he's got somebody who's not a felon

1:56 PM 18  in the car with him, he can have these guns in the car with

1:56 PM 19  him.  I don't think that's an accurate statement of the law.

1:56 PM 20           MR. SHAHID:  You still have to exercise dominion and

1:56 PM 21  control over the gun.

1:56 PM 22           THE COURT:  There is no evidence in this case to

1:56 PM 23  support an answer to that question, because we don't know who

1:57 PM 24  was with Mr. Fishburne at the time, and we don't whether he was

1:57 PM 25  a convicted felon or not at the time of the first seizure.  At

1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:57 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM
1:58 PM

1  the time of the chase, he was on one side.  The other guy was

2  on the other side.  They both took off, and unfortunately,

3  Mr. Fishburne was closest to the police officer, so he got

4  caught, but we don't know whether that fellow was -- that

5  person was legally or illegally possessing a firearm.  There's

6  no factual basis for that.

7         MR. SHAHID:  Well, Judge, that's sort of the --

8  listen, you've told this jury in your instructions they are to

9  consider the facts that is in front of them, period.  So we

10  can't go too far adrift on adding facts that they don't -- they

11  don't have.  You know, I think we can debate whether or not

12  this question applies to either Count number 1 or Count number

13  5.  I thought initially it may apply to Count number 5, but

14  thinking about it, it may apply to Count number 1.  We just

15  don't know.  I mean, I think that if a person is legally

16  carrying a firearm and driving a car -- it doesn't even say

17  driving a car; is in a car with another.  So it doesn't

18  matter -- they didn't make point of it being a driver or a

19  passenger.  You just have to answer the question in the

20  simplest form.  That simple question requires a simple answer

21  of "no".

22         THE COURT:  No, that question is a simple answer of,

23  "It depends upon the circumstances".

24         MR. SCHOEN:  Not necessarily.

25         THE COURT:  It is not 100% no.

1:58 PM 1        **MR. SHAHID:**  Judge, I disagree, because I think it's

1:58 PM 2    a very simple question.  "Is it illegal for a convicted felon

1:58 PM 3    to be in a car with another who was legally carrying a

1:58 PM 4    firearm?"

1:58 PM 5        **MR. SCHOEN:**  It depends.  You can legally carry a

1:58 PM 6    firearm in the center console of your car.  You can legally

1:58 PM 7    carry a firearm in the glove box of your car.  If the -- if the

1:58 PM 8    girlfriend's driving the car, and her gun is in the glove box,

1:59 PM 9    and he knows the gun is in the glove box, I think there's a

1:59 PM 10   reasonable argument like just bringing your girlfriend along

1:59 PM 11   with you doesn't get you a gun.  Depends on whether he's got

1:59 PM 12   the intent to exercise dominion and control.  Do I want to

1:59 PM 13   indict that case and try it?  Probably not.  But as a question

1:59 PM 14   of law, I don't think that the answer is a simple "no".  It's

1:59 PM 15   "not necessarily".

1:59 PM 16       **MR. SHAHID:**  99% of the time the police officer makes

1:59 PM 17   that stop and finds the gun, the officer is going to say,

1:59 PM 18   "Whose gun is it?"  And if the legal person says, "It's mine,"

1:59 PM 19   then that's going to end the inquiry.  Like Mr. Schoen said,

1:59 PM 20   nobody is going to charge that case.

1:59 PM 21       **MR. SCHOEN:**  I might if I can show that the other

1:59 PM 22   person got caught with a gun a number of other times.

1:59 PM 23       **THE COURT:**  If it's a slow month.  Okay.

1:59 PM 24       **MR. SHAHID:**  It's --

1:59 PM 25       **THE COURT:**  I think the answer to the question is

"not necessarily".

MR. SHAHID:  Well --

THE COURT:  It's not an absolute "no", because that's not the right answer, because you've acknowledged that there are situations where someone could be in a car, and the passenger could be legally or the driver could be legally carrying.  The other person -- if the other person has knowledge of the gun, the answer is "yes".  If the other person doesn't have any knowledge of the gun, the answer is "no".

MR. SHAHID:  Why don't we answer it this way?  "The simple answer is no; however, other factors may change" -- "other factors may make it illegal, depending on other facts."

THE COURT:  Well, but that means by saying that, that the proper answer is not "no", because you acknowledge that there is situations where that could be -- I mean, that could be possible, right?

MR. SHAHID:  If I'm in a car --

THE COURT:  Let's say this.  Let's say Ms. Ellison is driving the car.  Mr. Fishburne is in the passenger's seat. It's Ms. Ellison's pistol, because they all are, and it's sitting at Mr. Fishburne's feet.  He could be found guilty of possessing a firearm, right?

MR. SHAHID:  He could be charged, yes.

THE COURT:  And at that time if, in fact, Ms. Ellison was possessing that gun, she could be -- I mean, she had

2:01PM 1  dominion and control of it and ownership of it, and she's

2:01PM 2  legally able to do that, then how could I answer the question

2:01PM 3  "no"?

2:01PM 4  　　　　MR. SHAHID:  So you're going to give an answer of "it

2:01PM 5  depends"?

2:01PM 6  　　　　THE COURT:  I said I think the answer might be,

2:01PM 7  "Depending upon the circumstances."

2:01PM 8  　　　　MR. SHAHID:  "Depending upon other circumstances."

2:02PM 9  　　　　THE COURT:  Or I can just not answer the question,

2:02PM 10  because, you know, it really doesn't have anything to do with

2:02PM 11  this case.

2:02PM 12  　　　　MR. SCHOEN:  I'm okay with either no answer at all,

2:02PM 13  it's just not applicable, or "not necessarily" as being the

2:02PM 14  answer.  I think those are accurate.  I just don't want any

2:02PM 15  inaccurate statement.

2:02PM 16  　　　　THE COURT:  "Not necessarily" good enough for you?

2:02PM 17  　　　　MR. SHAHID:  I'd rather have "it depends".

2:02PM 18  　　　　THE COURT:  I know what you'd rather have.  You'd

2:02PM 19  rather have hair, just like I would.

2:02PM 20  　　　　MR. SHAHID:  I'd rather be tall, too.  That boat

2:02PM 21  sailed out of here.  Judge, I prefer that you answer the

2:02PM 22  question with, "It depends on other circumstances."

2:02PM 23  　　　　THE COURT:  Okay.  "It depends on the circumstances"?

2:02PM 24  　　　　MR. SHAHID:  That's fine.

2:02PM 25  　　　　THE COURT:  Period?

2:03PM  1        **MR. SHAHID:** You okay with that?

2:03PM  2        **THE COURT:** How about, "Not necessarily. It depends

2:03PM  3 on the circumstances"?

2:03PM  4        **MR. SHAHID:** I like it without the "not necessarily"

2:03PM  5 part of it. It just -- "It depends on other circumstances."

2:03PM  6        **MR. SCHOEN:** Why is that -- the answer is -- the

2:03PM  7 question is is it illegal, and you're saying it's not

2:03PM  8 necessarily illegal. It depends on the circumstances. I feel

2:03PM  9 like that's --

2:03PM  10        **MR. SHAHID:** Not necessarily. It depends on -- okay.

2:03PM  11 That's fine.

2:04PM  12        **THE COURT:** Okay. I'll just send that -- I just

2:04PM  13 wrote down, "Not necessarily", period. "It depends on the

2:04PM  14 circumstances", period. I'll just give that to the marshal and

2:04PM  15 give it back to them.

2:04PM  16        **MR. SCHOEN:** Thank you, Your Honor.

17        (Recess from 2:04 p.m. to 3:26 p.m.)

3:26PM  18           (Call to order of the Court.)

3:26PM  19        **THE COURT:** Take your seats. Thanks. I understand

3:26PM  20 we've got a verdict, so if you want to bring the jury in.

3:27PM  21        **THE MARSHAL:** Yes, sir.

22        (Jury in at 3:27 p.m.)

3:28PM  23        **THE COURT:** Y'all can sit. Mr. Foreperson, I

3:28PM  24 understand you and the jury have reached a unanimous agreement

3:28PM  25 on the verdict?

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 3:28 PM  | 1  | **THE FOREPERSON:** Yes, sir.                                |
| 3:28 PM  | 2  | **THE COURT:** Would you please hand it to the marshal       |
| 3:28 PM  | 3  | for me?                                                       |
| 3:28 PM  | 4  | **THE MARSHAL:** Here you go, Your Honor.                    |
| 3:28 PM  | 5  | **THE COURT:** Thank you. Okay.                              |
| 3:28 PM  | 6  | **COURTROOM DEPUTY:** May it please the Court, in the        |
| 3:28 PM  | 7  | matter of United States of America v. Quentin Fishburne, we, |
| 3:29 PM  | 8  | the jury, as to Count 1, we unanimously find that the        |
| 3:29 PM  | 9  | Defendant, Quentin John Fishburne, guilty. As to Count 2, we |
| 3:29 PM  | 10 | unanimously find the Defendant, John Quentin -- Quentin John |
| 3:29 PM  | 11 | Fishburne, guilty. As to Count 5, we unanimously find the    |
| 3:29 PM  | 12 | Defendant, Quentin John Fishburne, guilty. Signed, foreperson, |
| 3:29 PM  | 13 | March 3rd, 2020, in Charleston, South Carolina.              |
| 3:29 PM  | 14 | **THE COURT:** Ladies and gentlemen of the jury, is that     |
| 3:29 PM  | 15 | your verdict?                                                 |
| 3:29 PM  | 16 | **THE JURY:** Yes.                                           |
| 3:29 PM  | 17 | **THE COURT:** Do you want to poll the jury?                 |
| 3:29 PM  | 18 | **MR. SHAHID:** Please.                                      |
| 3:29 PM  | 19 | **THE COURT:** Okay.                                         |
| 3:29 PM  | 20 | **COURTROOM DEPUTY:** Ladies and gentlemen of the jury,      |
| 3:29 PM  | 21 | if this is your true and correct verdicts, please answer "yes". |
| 3:29 PM  | 22 | Mr. Evans?                                                    |
| 3:29 PM  | 23 | **A JUROR:** Yes.                                            |
| 3:29 PM  | 24 | **COURTROOM DEPUTY:** Westfall?                              |
| 3:29 PM  | 25 | **A JUROR:** Yes.                                            |

| | | |
|---|---|---|
| 3:29PM | 1 | **COURTROOM DEPUTY:** Just-Bourgeois? |
| 3:29PM | 2 | **A JUROR:** Yes. |
| 3:29PM | 3 | **COURTROOM DEPUTY:** Shumpert? |
| 3:29PM | 4 | **A JUROR:** Yes. |
| 3:29PM | 5 | **COURTROOM DEPUTY:** Aiello? |
| 3:29PM | 6 | **A JUROR:** Yes. |
| 3:29PM | 7 | **COURTROOM DEPUTY:** Brandon? |
| 3:29PM | 8 | **A JUROR:** Yes. |
| 3:29PM | 9 | **COURTROOM DEPUTY:** Todd IV? |
| 3:29PM | 10 | **A JUROR:** Yes. |
| 3:29PM | 11 | **COURTROOM DEPUTY:** Kimble? |
| 3:29PM | 12 | **A JUROR:** Yes. |
| 3:29PM | 13 | **COURTROOM DEPUTY:** Jenkins? |
| 3:30PM | 14 | **A JUROR:** Yes. |
| 3:30PM | 15 | **COURTROOM DEPUTY:** Henderson? |
| 3:30PM | 16 | **A JUROR:** Yes. |
| 3:30PM | 17 | **COURTROOM DEPUTY:** Hosler? |
| 3:30PM | 18 | **A JUROR:** Yes. |
| 3:30PM | 19 | **COURTROOM DEPUTY:** Miller? |
| 3:30PM | 20 | **A JUROR:** Yes. |
| 3:30PM | 21 | **COURTROOM DEPUTY:** If it pleases the Court, the jury |
| 3:30PM | 22 | has answered in the affirmative. |
| 3:30PM | 23 | **THE COURT:** Okay. All right. Ladies and gentlemen |
| 3:30PM | 24 | of the jury, thank you very much for your service in this case. |
| 3:30PM | 25 | It was a short case, but it was a very important case to both |

3:30PM 1    the Defendant and the Government.  We all appreciate your

3:30PM 2    participation, and if y'all go back to the jury room, I'll send

3:30PM 3    Catina back, because I understand one of you may have parked on

3:30PM 4    the street at a meter, so you'll probably get a ticket, so

3:30PM 5    Catina will fix it for you.  So you can go back to the jury

3:30PM 6    room.

7              (Jury out at 3:30 p.m.)

3:31PM 8              **THE COURT:**  Okay, Mr. Shahid, you have whatever time

3:31PM 9    the rules say to make an appeal, okay?

3:31PM 10             **MR. SHAHID:**  I will do that.

3:31PM 11             **THE COURT:**  Anything else from anybody else?

3:31PM 12             **MR. SCHOEN:**  Nothing.

3:31PM 13             **THE COURT:**  That y'all very much.

3:31PM 14             **MR. SCHOEN:**  Thank you, Your Honor.

3:31PM 15                  (End of proceedings.)

16

17

18

19

20

21

22

23

24

25

* * * * * * * * * * * * * * * * * * * *

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA


REPORTER TRANSCRIPT CERTIFICATE

    I, Tana J. Hess, Official Court Reporter for the United States District Court, Middle District of Florida, certify, pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter (Pages 207 through 295 inclusive) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.


_____
Tana J. Hess, CRR, RMR, FCRR
Official Court Reporter
United States District Court
Middle District of Florida
Tampa Division
Date:  February 16, 2022